## JOHN P. FORE *v.* THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Homicide. Instructions.*

    An instruction for the state which assumes a material matter of fact, prejudicial to the accused, as true, is erroneous.

2. SAME.

    An instruction for the state which purports to state hypothetically all the facts of the case, but which omits portions thereof material to the accused, is erroneous.

3. SAME.

    An instruction which charges the jury upon the weight of the evidence is erroneous.

4. SAME. *Self-defense. Estoppel.*

    An instruction for the state which denies the accused the right of self-defense, without first requiring a finding that the accused was the aggressor in the difficulty, is erroneous.

5. SAME.

    To deprive an accused of the right of self-defense, he must have been the originator of the difficulty; must have entered it armed with a deadly weapon, and he must have begun and entered into the combat intending to overcome his adversary by using the weapon, if necessary, in the encounter, and must have so used it. *Prine* v. *State,* 73 Miss., 838, approved.

6. SAME. *Justifiable homicide.*

    If one kill another under such circumstances as are caculated to engender, and which did engender, in the mind of the slayer, who was at the time making no assault on his adversary, a reasonable belief that the deceased was armed, and was immediately about to draw a pistol and shoot the slayer, the homicide is justifiable.

7. SAME. *Evidence. Photographs.*

    Photographs which are mere artistic reproductions of situations planned by the state's chief witness, although taken at the place of the homicide, are not admissible in evidence.

FROM the circuit court of Lincoln county.

HON. ROBERT POWELL, Judge.

John P. Fore, the appellant, was indicted, tried, and convicted for the murder of one Erastus Matthews, and, having been sentenced to the penitentiary for life, appealed. The evidence showed that the parties had been enemies for years, and each had made threats to kill the other; but the court below, on motion of the state, ruled out the evidence showing the threats made by Matthews. They were farmers, and resided within three or four miles of each other. Fore's eyesight was defective, and the testimony showed, or tended to show, that he was unable to distinguish one person from another, except when he was very close to them. On the day of the homicide, Fore, with the assistance of a farm hand and some members of his family, had loaded a wagon with seed cotton from a cotton house, and had directed the farm hand to drive the wagon from the place where it was loaded to the point to which it was to be carried. The wagon proceeded, but had gone only a short distance when it was stopped, and the driver of the wagon, who had met Matthews at the junction of two roads, was conversing with him about trading oxen. Matthews was in a buggy, and had stopped in front of the driver's team. Fore came on from the cotton house, and, finding the wagon stopped, the colloquy —a part of which is set out in the first instruction for the state, and which is referred to in the opinion—took place. The other facts are stated in, or are clearly inferable from, the opinion of the court.

The first and fifth instructions for the state, referred to in the opinion of the court, are as follows:

"1. If you shall believe from the evidence in this case, beyond every reasonable doubt, that Fore had intended to kill Matthews, and that being armed with a concealed weapon, which he had provided to shoot Matthews with on the first opportunity, he followed the wagon being driven by Gillman Cook from the cotton house down to the road where Matthews was,

and that the wagon was stopped there, and that Matthews was talking to Cook about the oxen, and that Fore came up and told Cook to go ahead, and that Fore asked Matthews what he had to do with it, and that Matthews said to Fore it was not any of his damned business, and Fore said: ' I must be mistaken in the man; who is that?' and that Matthews replied: ' Rass Matthews, by God; you know who it is,' and Fore said: ' No, I did not know who it was,' and that Matthews replied: ' You are a damned liar; you do know who it is,' and that then Matthews was sitting erect in the buggy looking at Fore, and as he made the last remark he suddenly turned in his seat, from Fore, and threw his right hand behind him and kept it there, and made no other motion, or did nothing else, and that Fore began to shoot, and shot three or four times, and killed Matthews, then such killing is not justifiable on any ground whatever, and you should find defendant guilty of murder."

"5. If you believe from the evidence, beyond all reasonable doubt, that Fore had threatened to kill Matthews, and being armed with a deadly weapon, which he had provided and intended to use in a difficulty with Matthews by shooting him with it, and that he began the difficulty, in which he shot and killed Matthews, then he is guilty of murder, even though you should believe that Matthews cursed him and called him a damned liar and threw his hand behind him just immediately before the shooting, and it will be your sworn duty to so find, for a killing under such circumstances is not justifiable or excusable on any ground whatever."

The fourth and sixth instructions refused appellant, and to which the opinion refers, are in these words :

"4. The court instructs the jury for the defendant, that if they believe, from the evidence in this case, that Matthews, while seated in his buggy, and when Fore stated to him that he did not know him, said, in an angry and rude tone, to Fore, ' You are a damned liar ' or ' a God damned liar,' and immediately threw his hand behind him in a threatening and menac-

ing manner, as though he intended to draw a weapon, and that his acts and conduct were such as to engender in the mind of Fore a reasonable belief that Matthews was armed, and intended to draw a pistol and shoot Fore, and that, under such circumstances, Fore shot Matthews, then Fore should be acquitted.''

'' 6. The court instructs the jury that if they believe, from the evidence, that Fore and Matthews were enemies, and that, when they met at the time of the homicide, Matthews, in a loud and angry tone of voice, called the defendant a ' damned liar ' or a ' God damned liar, and immediately threw his hand behind him in a threatening and menacing manner, as though he intended to draw a pistol, and that his acts and conduct were such as to engender in the mind of Fore, and did engender in the mind of Fore, a reasonable belief that he (Matthews) was armed with a pistol, and was attempting to draw it to shoot Fore, when Fore was making no assault on him, and that Fore shot him under such circumstances, then Fore is justified, even if you should believe Matthews was unarmed at the time.''

*A. C. McNair,* for appellant.

The court improperly admitted in evidence the photographs of the scene of the difficulty, and the testimony in reference thereto. Section 26 of the constitution of 1890, provides that, in all criminal prosecution, the accused shall have the right to be confronted by the witnesses against him. By the admission of the photographs and the explanatory testimony, appellant has been deprived of this constitutional right, and was seriously prejudiced in the trial of his case. The photographs were made and the evidence procured without his knowledge or consent, and not in his presence. An inspection of the scene by the court and jury, had in appellant's absence and without his knowledge, would have been violative of the accused's constitutional rights. In the case of *Foster* v. *State,* 70 Miss., 755, speaking on this subject, this court says: '' The constitutional right guaranteed to every person charged with crime, to be

confronted by the witnesses against him, will require a production of all evidence from all witnesses, animate or inanimate, in his presence, but not alone must all evidence be had in the presence of the accused, but it likewise must be had and taken in the presence of the court trying the case.'' Foster's case held, § 2391, code of 1892, authorizing views by juries in the absence of the accused, to be unconstitutional. The section was amended (Laws 1894, p. 50) by requiring that, in criminal trials, inspections must be had before the whole court and in the presence of the accused, and the production of all evidence from all witnesses or objects, animate or inanimate, must be had in his presence. The taking and introduction of photographs was a production of evidence from inanimate objects, and is expressly required to be taken in the accused's presence.

The evidence disclosed that the Ratliffs, witnesses for the state, in company with a photographer and one of the attorneys for the prosecution, in the absence of the accused, pointed out the alleged location of Fore and Matthews, and that the pictures were taken, and show the scene and situation of the parties as made know by said witnesses. The statute expressly prohibits this. But, aside from the statute, the evidence would not be admissible. The photographs, at best, are but secondary evidence, and if there could not be an actual view of the scene by the jury in the absence of the accused, surely it cannot be said that the scene can be imprinted on paper, in the absence of the accused, and then be presented to the jury, and the constitutional rights of the accused in this manner frittered away by indirection.

The first instruction for the state is erroneous for several reasons. It does not follow that because Fore threatened to kill Matthews, and because he was armed with a concealed deadly weapon which he had provided to shoot Matthews with on first opportunity, and because he followed the wagon driven by Cook to where Matthews was, that he was precluded from defending himself. The instruction omits any reference to the state of Fore's mind—whether he had the murderous purpose

formed at the time of the difficulty.   It tells the jury that if
Fore was armed with a deadly weapon which he had provided
to shoot Matthews with on first opportunity, he is guilty of
murder, although he may have provided the weapon to shoot
Matthews only in defending himself from the assaults of
Matthews in a difficulty which he did not provoke, but which
was provoked by Matthews..   The whole scope of this charge is
to refer the killing back to the procuring of the weapon; but it
omits to state that it must have been procured by Fore with
the purpose of using it to kill, or to do some great bodily harm
to Matthews in a difficulty which Fore intended to provoke, and
which he did provoke, and of its use in pursuance of felonious
design.    In order to deprive the defendant of the right of self-
defense, he must have been the originator of the difficulty; he
must have entered it armed; he must have procured the pistol
with the purpose to kill or do great bodily harm to Matthews
in a difficulty he intended to provoke, and which he did provoke,
and he must have used the weapon and killed Matthews in pur-
suance of that felonious design.    *King* v. *State*, 74 Miss., 576;
*Prine* v. *State*, 73 Miss., 838; *Hunt* v. *State*, 72 Miss., 413;
*Thomas* v. *State*, 61 Miss., 60; *Kerr* v. *State*, 17 So. Rep.,
328 (Ala.); *Hornsby* v. *State*, 94 Ala., 55 (10 So. Rep., 522);
*Domingues* v. *State*, 94 Ala., 9 (11 So. Rep., 190); *DeArmond*
v. *State*, 71 Ala., 351.

The instruction is unfair and prejudicial to the defendant in
this, that it singles out part of the evidence for prominent pre-
sentation to the jury, and omits other parts favorable to the ac-
cused.    If a hypothetical case is to be submitted to the jury,
all the material facts should be fairly stated.    *Prine* v. *State*,
73 Miss., 838; *Collins* v. *State*, 71 Miss., 691.

The instruction unlawfully assumes a most material fact,
that is, that Fore provided a deadly weapon to shoot Matthews
with on the first opportunity.    This question was not left to the
jury to be decided from the evidence, but is stated as an assumed
and proven fact.    This is error, and reversible error.    *Brown*

v. *State*, 72 Miss., 997; *Thompson* v. *State*, 73 Miss., 584; *Collins* v. *State*, 71 Miss., 691; *Kearney* v. *State*, 68 Miss., 233; *French* v. *Sale*, 63 Miss., 386.

It was for the jury to decide whether, from the circumstances of the killing, the purpose to kill or do great bodily harm existed, if at all, before the fatal shot. This function of the jury was invaded, and this right usurped by the court. The instruction is on the weight of the evidence; it is a peremptory instruction to find defendant guilty of murder, although Matthews cursed Fore and immediately threw his hand behind him as if to draw a pistol, and by his language, manner, gestures, and demonstrations created, in the mind of Fore, a reasonable fear and apprehension that Matthews was in the act of drawing and assaulting him with a deadly weapon. It was the province of the jury to decide whether Matthews' conduct, manner, acts, and language furnished reasonable cause to the accused to apprehend a design on Matthews' part to kill him or to do him some great personal injury, and whether there was imminent danger of such design being accomplished. This function was denied the jury, and was assumed by the court, which decided that Matthews' acts, language, and conduct did not constitute an overt act, and furnished no justification to the accused. While the court undoubtedly has the right, on the question of the admissibility of previous threats and difficulties, to decide whether there is evidence of an overt act, to admit the threats in evidence, it has not the right, after the evidence is before the jury, to say to the jury what is its weight and effect. The admissibility of evidence is for the court; its effect, weight, and sufficiency are for the jury. The facts testified to by the witnesses for the accused, and relied on as the justification, were part of the *res gestæ*, and could not rightfully be excluded, however unsatisfactory the court might think them to be. The credibility of the witnesses, the effect, weight, and sufficiency of the testimony, were for the jury, and the act of the court in usurping the function of the jury in this case cannot be sustained.

*Cassedy & Cassedy,* for the appellee.

The photographs were taken by a skilled photographer. They were made while Matthews was yet lingering from the mortal wounds inflicted by Fore, and while the road, the trees, and bushes were in the same condition as they were on the day of the shooting. Photographs have been approved as evidence both by courts of last resort and by text writers. 3 Rice on Evidence, 152; *Dyson* v. *N. Y., etc., R. R. Co.*, 14 A. S. R., 82; *Bedell* v. *Berkely*, 15 A. S. R., 370; *Marcey* v. *Barnes*, 77 A. D., 405; *Cowley* v. *People*, 38 A. R., 464. The pictures represented a view of the ground, of course, in a certain sense. They were photographic views, and it might be contended that under the ruling of this court in Foster's case, 70 Miss., 755, that it was an attempt to have the jury view the scene indirectly, when such an attempt would have been improper directly, or when the privilege would have been denied if asked. There is quite a difference in things themselves and the signs or representatives of things. The testimony of a witness as to the appearance of a place or person, is a description merely by signs and symbols, and especially is this true when the witness is required to locate objects and persons on a diagram. A photographic representation of a place or person is necessarily more perfect than a description in words or description on a diagram. As to the instructions, the controversy is well defined. Is a man justifiable in anticipating a deadly assault by the mere fact of his enemy placing his hand behind him? That was the defense in this case. The court held that it was not an overt act, and thus, testimony as to threats on the part of Matthews, if he had made any, was ruled out. By the first instruction for the state, the court held that even though the testimony of the defendant's witnesses was all true, still Fore, under the circumstances would be guilty of murder. It was a denial of the "hip pocket" dodge as a defense to a charge of murder.

*R. N. Miller,* on the same side.

The record shows that Fore was a farmer, living about four miles from Matthews, whom he killed.   Some years ago there appears to have been a falling out between Matthews and Fore, and the former prosecuted the latter for arson.   The record discloses that from that time to this there had been no good feeling between Matthews and Fore, and that Fore, some two years ago, had a lawsuit with Matthews about a mule, in which Matthews defeated Fore, and thereby infuriated him very much, and, from that time on, up to and before the killing, Fore repeatedly threatened to kill Matthews.

The first charge for the state combines two well-settled principles, to wit: (1) If Fore had threatened to kill Matthews, and did kill him, his crime is murder unless it could be justified under the plea of self-defense; (2) if he intended to kill Matthews, and was armed for the purpose of killing him on the first opportunity, and if he, so intending and so armed, went down to where Matthews was quietly sitting in his buggy, talking to a negro about oxen, and there originated the difficulty and killed him, then it could not be justified by self-defense. The charge simply says, if Fore had express malice, the crime, if crime at all, is murder, and that if armed with a concealed weapon, provided to shoot Matthews with on the first opportunity, accused followed the wagon down to where Matthews was, and opened the conversation, as detailed by his own witnesses, and Matthews did nothing but throw his right hand behind him, and Fore killed him, he was guilty of the only crime he could be guilty of, to wit, murder.   This conclusion is true because it is based on the testimony of defendant's witnesses as to the actual occurrence, and, on that, it is clear Fore could not plead self-defense, because he, so armed and intending, began, provoked, originated the difficulty.   It is true, also, because our court has always held the simple throwing the hand to pocket, in law, is no apparent danger, no hostile demonstration.

On these undisputed facts no possible conclusion could be reached by the legal mind than that Fore was estopped to rely on self-defense, or, if he was not, that there was no apparent danger, as defined by law, which could justify his cruel and unprovoked killing of Matthews, whom, suitably armed, he sought out for that purpose; having found him, he provoked a difficulty and then put him to sudden and cruel death. The recent utterances of this tribunal has satisfied my anxiety as a citizen that the day is dawning when violence shall cease its sway in Mississippi, and when the great body of the law, not its narrow, bare technicalities, that part of the law which guards us from harm while we lie in our mother's womb, which follows us all along life's journey, and sleeps like a faithful sentinel by our firesides, and, at last, protects our graves from molestation, will be enforced, and the real objects of government, the safety of life and the pursuit of happiness, may be enjoyed in security.

*Wiley N. Nash*, attorney-general, on the same side.

I call special attention of the court to the cases of *Goodwin* v. *State*, 73 Miss., 883; *Singleton* v. *State*, 71 Miss., 789; and *McGuire's case*, 37 Miss., 378.

Appellant was given the benefit, in every instruction for the state, of the doctrine of reasonable doubt, and this court, in the cases cited, show that the circuit court can go to a great length when the testimony establishes that the guilt of the defendant is clear. In every case the instructions must be interpreted with a view to the facts in proof.

Argued orally by *A. C. McNair*, for the appellant, and by *H. Cassedy, Sr.*, for the appellee.

WOODS, C. J., delivered the opinion of the court.

The first instruction given for the state is fatally erroneous. It assumes that the appellant was armed with a concealed weapon which he had provided to shoot Matthews with on the

first opportunity, and thereby took the determination of these most important facts from the jury. It is erroneous, also, in omitting altogether Matthews' reply to appellant's direction to his wagon driver to "go ahead," and in making appellant follow up this direction to the wagon driver by the inquiry, addressed to Matthews, what he had to do with it. The full statement of the facts disclosed by the state's witnesses shows that when the appellant told his driver to "go ahead," Matthews squared himself in his buggy, just like he had driven up, and told the negro driver to hold on; that he was going to have the oxen, and then the appellant asked Matthews what he had to do with it.

The instruction is erroneous, also, in that it is a charge upon the weight of evidence. What significance and value attached to Matthews' action in throwing his hand behind him, immediately upon denouncing the appellant as a damned liar, was for the consideration of the jury, and not the court. The instruction is erroneous, furthermore, because it cut the appellant off from the right of self-defense, without first requiring the jury to find that the appellant was the aggressor, and brought on the difficulty in which Matthews lost his life.

The fifth instruction given for the state was erroneous in assuming that the appellant was "armed with a deadly weapon which he had provided and intended to use in a difficulty with Matthews by shooting him with it." The rule of law on this subject is plain and well known. In the case of *Prine* v. *State*, 73 Miss., it was said: "He [the slayer] must have been the originator of the difficulty; he must have entered it armed, and he must have so brought it on and entered into it intending to use his pistol, and overcome his adversary, if necessary, in the course of the encounter."

The fourth and sixth instructions refused the appellant were substantially correct. We assume that they were refused because there was no witness who swore that Matthews, in a loud and angry tone of voice, called appellant a damned liar, and be-

cause no witness swore that Matthews threw his hand behind him in a menacing and threatening manner. But these objections are to words merely. The jury should have been permitted to say whether Matthews spoke angrily, and whether his act of throwing his hand behind him, under all the facts disclosed, was threatening. These charges substantially, and, in their essential parts, correctly, announced the law applicable to the appellant's theory of the case.

The photographs, and all the evidence touching them, should have been excluded. They were not simply reproductions of the scene of the homicide. They were photographic representations of *tableaux vivants* carefully arranged by the chief witness for the state, whereby his version of the tragical occurrence should be brought vividly before the mind's eye of the jury, and be impressed upon the jury as the view of the actual occurrence, and not as the mere statement of the facts of that occurrence as detailed by this witness. Their effect, if not their purpose, was, by photographic processes, to strengthen and bring out in striking and captivating fashion the version of the difficulty as given the jury in this witness' evidence. We repeat, the pictures were not photographic representations of the scene of the lamentable tragedy; they were artistic reproductions of situations carefully planned by the state's chief witness. Their only effect was to graven upon the jury's memory the account of the homicide given by the witness—an account at variance with that of at least two eyewitnesses of the homicide. That they were hurtful to the prisoner cannot be doubted. Indeed, with the average jury, these dumb witnesses, created by the joint efforts of the state's leading witness and the photographic artist, might go far to secure a verdict for the party offering them.

*Reversed and remanded.*