ROBERT MASTON *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder.* *Instructions.* *Code* 1892, § 732. *Evidence.*
*Insanity.*

Under Code 1892, § 732, prohibiting charges on the weight of
evidence, an instruction for the state in a murder case, in which
insanity is pleaded as a defense, is violative of the statute and
erroneous, if it tell the jury to consider certain evidence only
in determining whether the defendant was sane or insane, and,
if they find him to have been sane, not to consider it as matter
of justification, palliation or excuse of the crime.

2. SAME. *Jury to determine weight of evidence.*

What weight is to be given testimony, and what inferences can
be logically deduced from it, are questions submitted, under the
statute, solely to the judgment of the jury.

3. SAME. *Character for peace.* *Code* 1892, § 1151.

The defendant in a prosecution for murder may offer evidence of
his general reputation for peace or violence, especially under
Code 1892, § 1151, empowering the jury to fix imprisonment for
life in the penitentiary, in lieu of death, as the punishment in
case of conviction, although:

(*a*) The facts of the homicide have been proved by direct testimony; and

(*b*) The judge deems the fact of guilt clearly established; and

(*c*) The defendant relies upon insanity as a defense.

FROM the circuit court of Tunica county.

HON. SAMUEL C. COOK, Judge.

Maston, appellant, was indicted, tried, and convicted of the murder of one William Harris, was sentenced to suffer death, and appealed to the supreme court.

The facts upon which the decision turned are fully stated in the opinion of the court.

*F. A. Montgomery,* for appellant.

The first instruction for the state is directly on the weight of evidence, and should have been refused. The defense relied on is that the defendant is subject to occasional spells of insanity, caused by a fall received by him in his youth, that at such times he is utterly incapable of knowing right from wrong, that these spells are brought on by any great excitement or distress of mind, that in this instance it was brought on by the abduction and debauching of appellant's step-daughter, whom he loved as his own daughter, by the deceased, and this instruction in the language of Judge Woods, "emasculates this testimony and charges upon the weight of the fragments left." *Wilburn* v. *State,* 73 Miss., 245; *Wilson* v. *State,* 71 Miss., 880; *Coleman* v. *Adair,* 75 Miss., 660.

The court refused to allow the appellant to prove by witnesses who had known him for many years, lived in the same community, and were well acquainted with him and with his general reputation in the community, that his reputation and character was good, and that he was a peaceable and law-abiding citizen.

There is, so far as I have been able to find, only one case in Mississippi where a defendant in a murder case or any other, was denied the right to prove his good character, and that is the case of *McDaniels* v. *State,* 8 Smed. & M., 416. In that case the supreme court intimates that evidence of good character is only admissible where the guilt of the party accused is in doubt.

But this case has been overruled in all of our later decisions, and it is now the well settled law of this state that the defendant

in a criminal case is always entitled to prove his good character, and the only limitation on the universal rule is that this character of evidence must be confined to the particular trait of character involved in the nature of the charge. *Westbrooks* v. *State,* 76 Miss., 710.

For instance, in larceny, evidence is admissible to show the good character of the accused for honesty; in rape and seduction, for chastity; in perjury, for truth and veracity; and in murder, manslaughter, and assaults, for peace or violence, etc.

"In all cases the prisoner is permitted to prove his good character." Roscoe's Crim. Ev., 72; Wharton's American Crim. Law, 235, 233.

The good character of the accused, says our supreme court, should be left to the jury, and they should not be instructed that it may or may not raise a reasonable doubt of guilt. *Cotton* v. *State,* 31 Miss., 504; *Wesley* v. *State,* 37 Miss., 351; *Coleman* v. *State,* 59 Miss., 490; *Hammond* v. *State,* 74 Miss., 214; *Powers* v. *State,* 74 Miss., 777; *Westbrooks* v. *State, supra.*

*J. N. Flowers,* assistant attorney general, for appellee.

Defendant offered to show that his character and reputation for peace or violence was good. His defense was insanity. He had the witnesses and offered them, and the court held that this character of testimony has no place in a case of this kind.

The prevailing rule seems to be that such testimony is admissible, but it is not reversible error to exclude it in cases where guilt is established by overwhelming testimony and where proof of the best character could not possibly excuse the crime or mitigate its horror. *Coleman* v. *State,* 59 Miss., 490; *State* v. *Hull,* 20 L. R. A., 609, and notes.

Argued orally by *F. A. Montgomery,* for appellant, and by *J. N. Flowers,* assistant attorney general, for appellee.

TRULY, J., delivered the opinion of the court.

The first instruction granted by the court for the state stated

to the jury that certain testimony therein detailed "was only admitted in evidence for the purpose of showing the sanity or insanity of the defendant," and proceeded further to state that, if they believed he (the defendant) was sufficiently sane at the time of the homicide to know right from wrong, then "they will not consider the evidence in justification, palliation, or excuse of the crime." This was an instruction clearly on the weight of the evidence, and hence an invasion of the province of the jury. What weight is to be given testimony, and what inferences can be logically deduced from it, are questions which, by our law, are to be submitted solely to the judgment of the jury. This is the plain meaning of § 732 of the code of 1892. None but material facts should be admitted, but, having decided that the testimony offered is competent and admissible, the duty and power of the judge in that regard are ended. He is without authority to intimate to the jury his own opinion as to the effect of the testimony, or the weight to which it is entitled. An instruction which charges a jury upon the weight of evidence has been repeatedly held by this court to be error, and in certain cases error of a reversible nature. *Fore* v. *State,* 75 Miss., 727, 23 So. Rep., 710; *Wesley* v. *State,* 37 Miss., 327, 75 Am. Dec., 62; *Wilburn* v. *State,* 73 Miss., 248, 18 So. Rep., 576. We might not, on the state of case made by this record, reverse for this cause alone; but, as the case must be reversed upon another ground, the instruction herein under review should not be given on another trial hereof.

The defendant introduced several witnesses by whom he sought to prove "his general reputation for peace or violence, and that he was a peaceable and law-abiding citizen." To this an objection interposed by the state was sustained. We are not advised upon what theory the testimony was rejected. The language of the trial judge in his final ruling upon the objection was: "I rule that character of testimony has no place in this sort of a case." What meaning was meant to be conveyed by the expression "this sort of a case," we are not advised. The general

rule as to the admissibility of testimony to show the general reputation of the defendant is that such testimony is always admissible, the only limitation being that it must be confined to the particular trait involved in the nature of the charge against the defendant. · *Westbrooks* v. *State,* 76 Miss., 713, 25 So. Rep., 491; 1 Greenleaf on Evidence, sec. 64; 1 Wharton, Am. Crim. Law, sec. 636. The testimony offered by the defendant measured up to the requirement of the rule as stated. It was confined to the particular trait involved in the nature of the charge for which he was being tried, viz., his peace or violence. Therefore, under the opinion in the Westbrooks case, *supra,* it was subject to no objection on that score. If the trial judge rejected this testimony on the theory that it was inadmissible because the facts of the homicide had been proved by direct testimony, and did not depend upon circumstantial evidence, or because, in his opinion, the fact of guilt was clearly established, the ruling cannot be sustained upon either ground. The question of guilt is for the jury to determine, and not for the judge to decide, and any intimation by the judge of his opinion of the guilt of the defendant would be, of itself, manifest error. And to hold that the testimony was not admissible because the proof of the homicide was direct and positive, and not circumstantial, would be to run counter to the unbroken line of decisions upon this subject in our state, which have uniformly held that testimony as to character is always admissible, whether the question of the guilt of the defendant be, under the facts of the case, doubtful or not. Wharton, in his work on Criminal Evidence, says: "It has been argued by high authorities that good character is of weight only in doubtful cases. But the better opinion is to the contrary." Section 66. Probably the best statement of the rule to be found in our Reports is that of Campbell, J., in *Coleman* v. *State,* 59 Miss., 490: "The instruction before us declares that evidence of good character is insufficient to raise a reasonable doubt, when, excluding such evidence, the case is otherwise made out against the accused, and is objectionable as being on the

weight of certain evidence. We do not approve this view of the law with respect to evidence of the good character of the accused. 'A good name is rather to be chosen than great riches,' and in no other emergency of one's life may it or should it prove to be such a tower of strength and such an effective shield as when he is charged with crime. Evidence of the good character of the accused should go to the jury as any other fact, and its influence in the determination of the case should be left to the jury without any intimation from the court of its value. The court should not tell the jury that satisfactory evidence of the good character of the accused is or is not sufficient to raise a reasonale doubt of his guilt. The jury is to have this evidence as an aid to estimate the other evidence, and by the light of the whole to reach a verdict. There may be many cases where proof of good character would turn the scales in favor of the accused, and the just value of such evidence should not be depreciated by an instruction limiting its efficiency in any case." It seems probable, as suggested by the counsel for the appellant, that the trial judge refused to admit this testimony on the idea that testimony as to character was not admissible in cases where insanity was the defense, but, if so, the ruling is opposed to the weight of authority. In fact, the sounder reasoning shows that evidence of previous good character is especially appropriate in cases involving the question of the sanity of the defendant. It is for the jury to say whether or not they are convinced that a man who, by his entire previous life, has established and maintained an indisputable reputation for peace, and as a peaceable and law-abiding citizen, would have committed a crime of the nature charged against the defendant, unless reason had been temporarily dethroned. It must be accepted as a general rule that no man sinks all at once to the depths of crime, but that the descent from the high place of good citizenship to the lower level of the criminal, though easy, is gradual. Therefore, whatever the offense with which a man is charged—whatever the defense he may interpose thereto —his previous good character, and the reputation which he has

built up in the community in which he lives, are approprite subjects of inquiry by the jury; and testimony relating thereto is always competent and material, and the rejection thereof will constitute reversible error.

There is another consideration which shows how vitally important it was to the cause of the appellant in the instant case that the jury should have had the opportunity of considering, in passing upon the question of his guilt, the character and reputation which he bore, and that is this: Under our law, in cases of homicide, it is for the jury to fix the penalty upon conviction. They have the power to say whether or not the defendant shall be hanged, whether he shall be imprisoned in the penitentiary for life, or, in proper cases, whether he shall be convicted of manslaughter. It was certainly proper, therefore, that, in passing upon the facts in this case, the jury should have been advised as to whether the accused was a hardened criminal, or whether previous to the homicide he had enjoyed a good reputation for peace among his neighbors. It might probably be that a jury would not inflict the same extreme penalty upon the man of peaceable habits, who stood for the first time on trial, that justice would demand should be imposed upon the depraved and habitual lawbreaker. The more critical the extremity of his situation, the weightier reason why he should be permitted to rely upon the strength of his established reputation. We conclude, therefore, that it was manifest and reversible error in the court below to reject the testimony as to appellant's previous good character.

We do not regard any other assignment of error contended for by appellant as worthy of serious consideration.

*Reversed and remanded.*