JONES *v.* STATE.*

(Division B.   Oct. 31, 1927.)

[114 So. 343.   No. 26607.]

CRIMINAL LAW.   *Map of scene of homicide held admissible, notwith-*
*standing hearsay testimony with reference to location of objects.*
Map of scene of homicide, drawn by persons who made measure-
ments, *held* admissible, notwithstanding hearsay testimony with
reference to locations; such testimony being information given
and substantiated under oath at the trial.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 745, n. 21.

APPEAL from circuit court of Leflore county.
HON. S. F. DAVIS, Judge.

James Jones was convicted of murder, and he appeals.
Affirmed.

*Kimbrough, Tyson & Kimbrough,* for appellant.

The diagram or plat was offered in evidence as Ex-
hibit "A" to the testimony of Mr. Johnston.   Objection
was immediately made because of certain entries on the
map, but counsel for appellant stated that they did not
object to the introduction of the map showing permanent
physical structures such as houses, roads, fences, ditches,
trees, etc., or distances between them, but they did ob-
ject "to the location of persons in the field and other mat-
ters on there that are not permanent fixtures and of
necessity were entered by the witness on hearsay state-
ments."

It was fatal error for the state to be allowed to go to
the scene of the homicide and through its county at-
torney prepare a plat based entirely on hearsay and
then examine and cross-examine ignorant negroes, some

of whom testified they could not write, and at least one
of whom testified that she did not know what the map
meant, in reference to such map.

If this map and the testimony in reference thereto had
not been presented to the jury, we can see how the jury
could readily have brought in a verdict of not guilty in
this case.   On the other hand, we can conceive of how
the jury might have brought in a verdict of guilty, which
verdict would, no doubt, have been sustained by this
court, but it is folly to argue that the testimony com-
plained of was not of a most influential and damaging
character.   When it is considered that the county attor-
ney, known personally, no doubt, to each juror in the box
and carrying with his testimony the weight of his official
position, testified to the correctness of the map, and the
witnesses were examined in respect thereto, as to where
they located themselves in the fields at the scene of the
homicide, it is apparent what tremendous influence such
testimony necessarily had on the minds of the jury.   If
the county attorney had confined his map to the location
of immovable physical bodies, such as houses, trees,
ditches, etc., and the witnesses had been interrogated in
respect to such map, no proper objection, we think, could
have been made by appellant; but when the county attor-
ney went into speculation and undertook to locate per-
sons at various points over the fields of appellant and de-
ceased, and then testify as to what the conditions were,
what the distances were between these arbitrary points
and what his and their observations resulted in, defend-
ant was deprived of that fair trial to which he is entitled
under the law.

In this connection, we will cite but two cases which we
think conclusively dispose of this matter; namely, *Fore*
v. *State,* 75 Miss. 727; and *Brett* v. *State,* 94 Miss. 669,
47 So. 781.

*Rufus Creekmore,* Special Assistant Attorney-General,
for the state.

The record shows that Means Johnston, county attorney of Leflore county, several days after the killing took place, went out to the scene of the difficulty, taking with him a tape line, and made measurements showing the distances from the deceased's house to the cotton house, from the cotton house to the ditch, from the ditch to a certain thorn tree, etc. After making these measurements, he prepared a map showing the location of these various fixed objects and also showing in a rough way the topography of the ground. The map as originally prepared also showed the location of the deceased and the defendant as the same was pointed out to him by the witnesses. The testimony shows that there had been no change in the physical conditions existing at the time of the killing from that existing at the time the map was made by him, and that the map or diagram as made by him was a correct diagram of the premises. The map was thereupon offered in evidence as Exhibit "A" to the testimony of this witness; whereupon objection was made by counsel for the appellant.

Mr. Sid Gillespie was the owner of the place on which McBee was killed and he accompanied the county attorney to the scene of the killing on the day on which the county attorney made the observations and measured the distances for the purpose of preparing the map. Mr. Gillespie was a witness for the state.

From a reading of the record, it is perfectly manifest that no error was committed by the court in permitting this map to be introduced in evidence and to be seen by the jury. The only objections which counsel made to the map at the time it was first offered were sustained by the court, and the points on the map indicating the location of persons insofar as such locations were placed on the map by the county attorney from hearsay testimony were ordered erased by the court. It is, therefore, perfectly manifest that the statement made by the district attorney to the effect that all objections interposed by the defendant had been withdrawn was correct and

that no objection at that time was being made to the map by the appellant. Insofar as the objections were made to the point indicated by the arrow which was on the map at the time Mr. Gillespie was introduced by the state in rebuttal is concerned; there certainly could be no prejudicial error committed by the court in permitting this point to remain thereon.

Counsel in their brief in support of the contention made by them have cited *Fore* v. *State,* 75 Miss. 727; and *Brett* v. *State,* 94 Miss. 669, 47 So. 781, which cases held that photographs which were, not true representations of the scene of the homicide, but which were created by joint efforts of the state's leading witnesses, whose testimony is contradicted, and a photographic artist are not admissible in evidence. The principles laid down in these cases are sound, but for manifest reasons are not applicable to the case at bar. In both of these cases state's witnesses arranged the scenes and placed persons at points where they said such persons were standing at the time of the difficulty; and with the scenery so arranged, photographs were taken. Such is not the case here. The testimony of the district attorney shows that the diagram is a true representation of the premises on which the killing occurred and of the location of the immovable objects, such as house, ditch, trees, fence rows, etc. It is deemed unnecessary to cite authority on this proposition, because as we view the record no objections have been made to the map as it was actually introduced.

*LeBarron* v. *State,* 107 Miss. 663, 65 So. 648, is, however, decisive of the proposition here presented, which case held that a photograph was admissible in evidence if it was proved to be a true and accurate representation of the subject-matter. The rule as to the introduction of such evidence being the same as that of pictures, drawings or diagrams made by hand.

HOLDEN, P. J., delivered the opinion of the court.

James Jones was convicted and sentenced to the penitentiary for life for the murder of Johnnie McBee, and appeals to this court.

We have reviewed the record in the case, and find that the testimony offered by the state was sufficient to sustain the verdict of the jury.

It is true there was a conflict in the testimony as to whether or not the killing was in self-defense, but the jury decided the dispute in favor of the state.

Reversal is urged by the appellant upon one ground alone, and that is that the court erred in permitting the state to introduce before the jury a certain map of the surroundings and inanimate objects at the place where the homicide was committed. The complaint seems to be that the map was inadmissible, because it located "persons in the field and other matters on there that are not permanent fixtures, and of necessity were entered by the witness on hearsay testimony" (quoting from appellant's brief).

The basis of the contention of counsel for the appellant appears to be founded upon the rule announced in *Fore* v. *State,* 75 Miss. 727, 23 So. 710, in which it was held that:

"Photographs which are mere artistic reproductions of situations planned by the state's chief witness, although taken at the place of the homicide, are not admissible in evidence."

We do not think the rule announced in the *Fore case, supra,* is applicable to the case at bar, for the reason that the map introduced in the instant case was identified by the testimony of witnesses as being a fair representation of the grounds, surroundings, and inanimate objects located at the place of the homicide. This map was shown to have been drawn by persons who measured the ground, ditches, fields, and such inanimate objects and conditions, and it was not a photograph or map purporting to show how the tragical occurrence took place; and the hearsay

testimony complained of by appellant with reference to the location of the inanimate objects, distances, and surroundings on the map was not objectionable, because it was information given and substantiated, under oath, at the trial; it was subject to dispute, and the correctness of the map offered to the jury was a question to be decided by the jury, from the testimony of witnesses showing the *locus in quo*.

Therefore the Fore case, in which photographs were erroneously admitted, is very much unlike the case at bar, because of the difference pointed out above.

We do not think there is any merit in the contention of counsel for appellant in reference to the introduction of the map involved herein; and as there are no other errors assigned which are reversible, we are of the opinion that the judgment of the lower court should be affirmed.

*Affirmed.*