ALABAMA & V. R. Co. *v.* FOUNTAIN.*

(Division B.    Jan. 31, 1927.)

[111 So. 153.    No. 26146.]

1. MASTER AND SERVANT. *Railroad's negligence in inspecting cable, whose breaking caused injury to employee, held question for jury.*

   Where an employee of a railroad is killed by the breaking of a wire cable operated by steam, and where both the railroad and employee, at the time, were engaged in interstate commerce, and there is testimony that the proper way to inspect a cable is by taking it and bending and releasing it, to see whether it has lost its tension and flexibility, and the proof shows that no such inspection was made by the railroad, and the cable broke in lifting a much less weight than it was manufactured to lift, and such cable had been in use for five or six years, and was liable to become brittle, and that such method of inspection would discover that fact, and other evidence on the part of the company shows it was inspected in a different manner, the proof presents a question for the jury as to whether or not the railroad company was guilty of negligence in reference to the inspection.

2. TRIAL. *Instruction that, if railroad knew or should have known of defect, and cable's breaking therefrom proximately caused employee's death, to find for plaintiff was not reversible error when considered with other instructions.*

   An instruction in such case for the plaintiff which instructs the jury that it was the duty of the defendant railroad company to furnish deceased with a reasonably safe place to work, and if the jury believe from the evidence that the cable in question that broke was not sufficiently strong, or was defective when it broke, and that defendant knew or should have known of such

defect, if such there was, and that said cable was not reasonably safe for the kind of work it was doing when it broke, and that the breaking of the cable was the proximate cause of the death of deceased, and that the railroad company was guilty of negligence in furnishing such cable if it was defective, and that such was the proximate cause of the death of deceased, they should find for the plaintiff, and this is not reversible error, when the instruction is considered in connection with instructions which tell the jury that  the mere breaking of the cable was not evidence that the defendant was guilty of negligence, and defining the railroad company's duty in reference to furnishing such cable.

3. TRIAL.  *Instructions for both plaintiff and defendant are to be construed together; if all instructions construed together fairly present law, defect in single instruction is not cause for reversal.*
The instructions for the plaintiff and defendant are to be taken and construed together and if, when so construed, they fairly present the law applicable to the facts, a judgment will not be reversed because of any defect in any single instruction.

---

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 1153, n. 95; Trial, 38Cyc, p. 1779, n. 76; p. 1785, n. 90.

APPEAL from circuit court of Scott county.

HON. G. E. WILSON, Judge.

Action by Vallerie Fountain, administratrix of Flex Fountain, deceased, against the Alabama & Vicksburg Railroad Company.  From a judgment for plaintiff, defendant appeals.  Affirmed.

*Charles N. Burch, Sidney L. McLaurin, Hirsch, Dent & Landau,* and *R. H. & J. H. Thompson,* for appellant.

I.   The facts of the case show the case to be under the Federal Employer's Liability Act.  The United States supreme Court decisions so determine.  *Pederson* v. *Delaware L. & W. R. Co.,* 229 U. S. 446; *N. Y. Cent. R. R. Co.* v. *Porter,* 249 U. S. 168; *Philadelphia, etc., R. R. Co.,* 250 U. S. 130; *So. Pac. R. R. Co.* v. *Industrial Accident Commission,* 251 U. S. 259.

The admission by plaintiff in which the defendant concurred that the case was one under the Federal Employ-

er's Liability Act and the fact that the case was tried in the circuit court as one within the act, seemingly at least, should estop either and both parties from controverting in this court the application of the Federal statute to the case. *Chicago, etc., R. R. Co.* v. *Harrington,* 241 U. S. 177; but see *Davis, Director General,* v. *Green, Admx.,* 260 U. S. 349.

II. The case being one under the Federal Employer's Liability Act, it follows that the Mississippi *prima-facie* statute, Code of 1906, section 1985 section 1645, Hemingway's Code) making proof of injury inflicted by the running of engines, cars, etc., of a railroad company *prima-facie* evidence of the want of reasonable care by the railroad company, has no application here. Three United States supreme court decisions, each reviewing cases decided by this court upon writ of error, conclusively established this point. *N. O., etc., R. R. Co.* v. *Harris,* 247 U. S. 367; *N. O., etc, R. R. Co.* v. *Scarlet,* 549 U. S. 528; *Yazoo, etc., R. R. Co.* v. *Mullins,* 249 U. S. 531.

And it is equally true that no state statute will preclude any defense, such as the statute of this state abolishing assumption of risk as a defense if the defense be warranted under the Federal Employer's Liability Act, it being complete in itself. *Gulf, etc., R. R. Co.* v. *Simmons,* 109 So. 857.

III. Our claim is that the plaintiff failed to make out a case entitling her to a recovery against the railway company because there was no proof that her intestate and former husband came to his death by reason of any negligence or wrongdoing of the defendant and the court below should have given the peremptory instruction asked by defendant.

The plaintiff's argument is this: "The cable broke; Fountain was killed; therefore, the company was negligent since the cable would not have broken but for its negligence." It must be borne in mind that this is a case under the Federal Employer's Liability Act, and

the Federal rule as to when a directed verdict should be given is applicable. *Small Co.* v. *Lamhorn & Co.,* 267 U. S. 248.

This court has said it would set aside a verdict, even when the evidence is conflicting, if the verdict is "contrary to the overwhelming weight of convincing evidence." *Mobile, etc., R. R'. Co.* v. *Bennett,* 127 Miss. 413, 90 So. 113.

IV. The *res ipsa loquitur* doctrine is not applicable to the case. To apply this doctrine to this case, would be to approve and adopt the process of reasoning known as the *post hoc, ergo propter* argument, heretofore condemned by this court. *Chicago, etc., R. R. Co.* v. *Doyle,* 60 Miss. 977, 986; *Scooter* v. *Maggison,* 110 So. 248.

The Federal courts do not apply the doctrine to suits by servants or employees against the master or employer, and, also, they guardedly and seldom apply the doctrine to other cases. A conspicucious case, perhaps the leading Federal decision showing the doctrine inapplicable to suits between master and servant is *Patton* v. *Texas Pacific R. R. Co.,* 179 U. S. 658, s. c. 45 L. Ed. 361. See, also, *Fitzgerald* v. *So. R. R. Co.,* 6 L. R. A. (N. S.) at 344; *Minneapolis, etc., Co.* v. *Cronon* (U. S. Circuit Court of Appeals), 166 Fed. 651, s. c. 20 L. R. A. (N. S.) 817. *N. O., etc., R. R. Co.* v. *Scarlet,* 249 U. S. 528, is much in point. Another authority worthy of at tention is *Chicago, etc., R. R. Co.* v. *Payne,* 8 Fed. (2nd) 332.

The supreme court of the United States has defined negligence to be "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done." *R. R. Co.* v. *Jones,* 95 U. S. 441, 24 L. Ed. 506; the *Nitro-Glycerine case,* 15 Wall 536, 21 L. Ed. 206.

We cannot see and we believe this court cannot find from the testimony in this case that our client, the ap-

pellant, (a) failed to do anything that a reasonable and prudent person ordinarily would have done under the circumstances of the situation shown by the evidence, or (b) that it did anything such person under the existing circumstances would not have done, and (c) the plaintiff in this case has not proved that the defendant by its act or omission has violated any duty encumbent on it which caused the death of her intestate. The evidence shows that her intestate came to his death by a pure accident.

V. *For state decisions applying the res ipsa loquitur doctrine in suits between master and servant, see:* Lampton v. *Atkins,* 129 Miss. 600, 92 So. 638; *A. & V. R. R. Co.* v. *Groome,* 97 Miss. 201; *Hope* v. *Natchez, etc., R. R. Co.,* 98 Miss. 822, 54 So. 369; *M. C. R. R. Co.* v. *Bennett,* 111 Miss. 163, 71 So. 310; *A. & V. R. R. Co.* v. *White,* 106 Miss. 141, 63 So. 345, reaffirming the law as announced in the *Hope case,* 98 Miss. 822, 54 So. 369.

VI. *Assumption of risks.* The suit being one under the Federal Employer's Liability Act, the state statute abolishing the assumption of risk as a defense can have no applications to the case. The Federal Safety Appliance Act of March 2, 1893, chapter 196, section 8; 27. Statutes at Large 532 (U. S. Compiled Statutes, 1918, section 8612) abolishes assumption of risks as a defense only in cases where an employee is injured, or killed, by a locomotive, car or train in use contrary to the provisions of the Safety Appliance Act of Congress. See, also, Federal Employer's Liability Act of April 22, 1908, chapter 140, section 5; 35 Statutes at Large 66 (U. S. Compiled Statutes, 1918, section 8660, and *Seabord, etc., R. R. Co.* v. *Horton,* 223 U. S. 492, construing statute.

One instruction erroneously told the jury that it was the duty of the railway company to furnish the decedent a reasonably safe place in which to work, thus bringing to the attention of the jury a subject-matter having no application to the case. The safe-place-to-work doc-

trine applies only, as a general rule, to permanent places of labor, such as factories, mines and the like. It had no more application to the case at bar than it had to *N. O.; etc., R. R. Co.* v. *Williams,* 96 Miss. 373, 53 So. 619, where an instruction propounding the doctrine was condemned by this court.

The instruction propounded the safe-place-to-work doctrine as if imposing an absolute duty on the master. This was erroneous; it enlarged the doctrine beyond its true scope. *The Mullins case,* 240 U. S. 528, at 533, shows that even in respect to that doctrine the master is only required to use reasonable care. To the same effect see, *Chicago, etc., R. R. Co.* v. *Payne,* 8 Fed. (2nd) 332.

*Chicago, Milwaukee, etc., R. R. Co.* v. *Coogan,* 70 L. Ed. 629, decides that under the Federal Employer's Liability Act the burden is upon the plaintiff to show negligence or facts and circumstances from which there is a rational inference of negligence. It is not sufficient that there should be a conjectural or speculative inference of negligence. See, also, *Patton* v. *T. & P. R. R. Co.,* 179 U. S. 658; *Looner* v. *Metropolitan Co.,* 200 U. S. 480; *St. Louis, etc., R. R. Co.* v. *McWhirter,* 229 U. S. 265; *St. Louis, etc., R. R. Co.* v. *Mills,* 70 L. Ed. 550.

*Mize & Mize, Eastland, Mize & Dudley* and *E. O. Sykes,* for appellee.

Appellant argued that the doctrine of *res ipsa loquitur* is not applicable. This doctrine was not invoked by appellee. In fact, the instructions given appellant state that it is not applicable. The theory of the appellee in this case is that the appellant was negligent in its nondelegable duty of using reasonable care and diligence in furnishing a safe place and safe appliances with which to do this work. That this negligence consisted in the fact that appellant bought an old machine which has been in use for about two years from the Hodge Ship Building Company and used this machine with this cable

for four years without ever at any time properly testing and inspecting this cable as it was its duty to do, well knowing that a defective cable endangered the lives of its employees daily.

This question of what was a proper and reasonable inspection of this cable under the testimony in this case, was a controverted fact to be decided by the jury. Witness Sullivan is positive that the only proper way to inspect a cable which has been in use some time is by bending it back and forth in order to test its tension or resisting powers.

The greater the danger to human life, the greater the duty rests upon the master to use reasonable care and diligence to keep these appliances safe. We submit, therefore, that this entire question was a controverted question of fact for the jury and that its verdict will not be disturbed in this court.

The facts in this case are very different from those in *Patton* v. *R. R. Co.,* 179 U. S. 658, 45 L. Ed. 361, cited by appellant. The law, however, announced in this case is directly applicable. In this particular case the master is bound to have known that if the cable broke, the probable result would be a loss of life; yet he absolutely failed ever to make a proper inspection and test of this cable. That this was a controverted question of fact to be decided by the jury is directly in line with *B. & P. R. R. Co.* v. *MacKey,* 157 U. S. 72, 39 L. Ed. 624; *R. R. Co.* v. *McDade,* 135 U. S. 554, 34 L. Ed. 235; *Gardner* v. *Mich. Cent. R. R. Co.,* 150 U. S. 349, 37 L. Ed. 1107.

The lower court was most liberal in its instructions given the appellant and when considered as a whole there can be no possible objection to them.

*Charles N. Burch, R. H. & J. H. Thompson, R. L. Mc-Laurin* and *Hirsch, Dent & Landau,* in reply, for appellant.

The court will observe that from the uncontradicted evidence of parties in charge of the machine that the cable

broke because of a latent defect that could not have been discovered by inspection, the cable being frequently and continuously inspected in a way which, we submit, was the reasonable, proper and only way it could be inspected, and serve its purpose with reasonable dispatch; therefore, there is no conflict in the evidence in this regard.

The rule announced by the courts of this state and the supreme court of the United States is that an employer is not liable for the death of or the injury to an employee from defectiveness or an appliance in use and operation, unless the employer knew of the defect or was guilty of negligence in failure to discover it. This being the law, where is the evidence to show when, where, how, or under what circumstances the defect arose? As the evidence is silent as to when, how, or under what circumstances the defect arose, the appellee's case must fail. *M. C. R. R. Co.* v. *Bennett,* 111 Miss. 163; *Looney* v. *R. R. Co.,* 200 U. S. 456; *R. R. Co.* v. *Barrett,* 156 U. S. 617; *Patton* v. *R. R. Co.,* 156 U. S. 658; *T. & P. R. R. Co.* v. *Barrett,* 166 U. S. 617; *L. & N. R. R. Co.* v. *Campbell,* 12 So. 574.

Again, the rule is that unless the injury to or death of an employee results from some defect, imperfection or other cause which would have been disclosed by proper inspection, failure to inspect is not actionable. Surely, if an inspection after the break failed to disclose any defects in the cable, no sort of an inspection, however rigid or critical, before the break would have disclosed any defect and thereby prevented the use of the cable. *Farmer, Admnx.,* v. *C. & O. R. R. Co.,* 131 S. E. 341.

It is a matter of common knowledge that cables and all kinds of machinery break when no reason can be given for such happening. *Van Scoter* v. *Megginson,* 110 So. 248.

Argued orally by *R. H. Thompson* and *R. L. Dent,* for appellant, and *E. O. Sykes,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a judgment against appellant for the death of Flex Fountain, who was employed by appellant, both appellant and deceased being, at the time of the death, engaged in interstate commerce. Deceased was killed instantly at Jackson, Miss., in October, 1925, while engaged in the work of elevating the railroad track of appellant in said city.

Appellant used a "derrick car" for the purpose of raising the track, which was operated by steam power, and the track was raised by means of what is called a "boom" which was raised by a three-fourths inch wire cable rope, and this cable wound round a drum. The injury resulted by reason of the breaking of this wire cable which was holding the track at the desired elevation while the deceased was putting shims or props under the track to support it or raise it to the position to which it had been elevated by the derrick car.

This derrick car had been purchased from a shipbuilding concern after the late war, and had been in use, at the time of the injury, about six years, having been used by the shipbuilding company about two years, and by the railroad company, at intervals, for about four years. At the time the wire cable broke, the track had been raised and was being held in position by such cable, and no power, at the instant, being applied, the cable supported the weight of the boom and boom, which, according to the testimony, weighed about twelve thousand pounds. The cable was manufactured by a reputable manufacturing concern, and was supposed to last for a period of from twelve to fifteen years, and was supposed to have a lifting capacity of twenty tons. The pr character of the break is not fully disclosed in the evidence, but it seems to have been broken smoothly or completely at the point where it parted.

The crew who were firing the engine and operating it testified that the derrick car was brought over about two

days prior to the time of the death of the deceased, and that they were looking at the cable when it was being operated, and observed no broken strands of wire, and the proof for the defendant showed that it had been inspected and appeared to be in good condition a day or two before the injury occurred, and the proof for the plaintiff tended to show that the cable being used had become brittle after long use, and that it was necessary to inspect such cable by taking it and bending it, and then releasing, to see whether it retained its tension or flexibility. If it had become brittle, when bent, it would not reflex readily to its original position, and was liable to break; but, if it retained its tension or flexibility so that it would react when released and recover its original position, it was in good condition.

The witnesses who testified for the plaintiff as to such fact had had considerable experience in using cables in lifting logs and similar movements for a lumber company which had used like cables to lift logs onto cars, and in drawing logs by means of skidders from the forest to the tracks.

The only method of inspection shown by appellant was observation of the wire in its operation by the crew, and having an inspector to inspect it, but such inspector who only had inspected it shortly before the time of the injury, did not personally testify as to the method used by him in inspecting the cable.

It is insisted by the appellant, first, that the evidence is insufficient to sustain the verdict, and that the appellant only owed the duty of using ordinary and reasonable care in inspection of the cable.

The court instructed the jury for the defendant that the mere breaking of a cable was not evidence that defendant was guilty of negligence, and no contention is made by appellee that the mere breaking of the cable is sufficient to establish negligence, and no claim of the doctrine of *res ipsa loquitur* is contended for by plaintiff.

We think the plaintiff's witnesses who testified were competent to testify as to the proper manner of inspecting cables to discover brittleness or other defects therein. Although they had not worked for a railroad company in proper railroad operations, still they had used drums, cables and booms in similar, though not exactly, work. They had had experience in the matter, and one of them testified that it was customary and usual among all operators, so far as he had observed during his experience, to test the safety of the cable in the manner above indicated.

We think it was a question for the jury as to whether reasonable care had been used in reference to such inspection, and that the evidence warrants the jury in finding that appellant did not use proper methods of inspections as to the safety of the cable.

It is also complained that the court erred in giving instruction No. 1 for the plaintiff, which reads as follows:

"The court instructs the jury for the plaintiff, Mrs. Vallerie Fountain, executrix of the estate of Flex Fountain, deceased, that it was the duty of the defendant railroad company to furnish Flex Fountain with a reasonably safe place to work; and if the jury believe from the evidence that the cable in question that broke was not sufficiently strong, or was defective when it broke, and that defendant knew or should have known from reasonable diligence of the defect, if defect there was, and that said cable was not reasonably safe for the kind of work it was doing when it broke, and that the breaking of said cable was the proximate cause of the death of Flex Fountain, and the jury further believes from the evidence that the railroad company was guilty of negligence in furnishing said cable if defective it was, and that said negligence, if negligence there was, was the proximate cause of the death of Flex Fountain, then they shall find a verdict for the plaintiff."

The defendant obtained a number of instructions upon the same subject explaining fully its duty and obligation in respect to the matter.

The second instruction for the defendant informed the jury that—The deceased by "entering and continuing in the service of the defendant, assumed all risk of danger normally and necessarily incident to the occupation in which he voluntarily engaged. And he assumed the risks of this sort, whether he was actually aware of them or not. The defendant did not insure his safety against the breaking of machinery used in its service. Unless the jury believe from the preponderance of the evidence that the cable broke as a result of negligence on the part of the defendant, then it is the sworn duty of the jury to find for the defendant, regardless of every other fact in this case."

It also procured instructions that a reasonable inspection did not mean such an inspection as would necessarily or infallibly disclose a defect if one existed, but only such inspection as a reasonably prudent man, in the exercise of ordinary care, would make, and that, if the plaintiff's decedent was killed as the result of a mere accident, the jury should find for the defendant. It also procured instructions that the defendant was not required to furnish its employees with a cable that would not break; that all that was required of defendant in furnishing a cable was the exercise of a reasonable degree of diligence, to furnish a reasonably safe cable for the purpose for which it was intended to be used, and to exercise a reasonable degree of diligence to keep it in a reasonably safe condition, and that, therefore, unless the jury should believe from a preponderance of the evidence that the defendant did not exercise a reasonable degree of care to furnish a reasonably safe cable, and keep it in a reasonably safe condition for the purpose for which it was intended to be used, the jury should find for the defendant; that, even if the jury believe from the evidence that the deceased was killed by the breaking of

the cable thus permitting the boom to fall upon him, this does not, of itself, impose liability upon the defendant; and that the jury should find a verdict for the defendant, and unless the plaintiff had proven, by a preponderance of the evidence, that the defendant did not exercise ordinary care to furnish a reasonably safe place, and exercise ordinary diligence to keep it in a reasonably safe condition.

The jury was further instructed for defendant that, even if they believed from the evidence that the cable broke and caused the boom to fall and strike the decedent and kill him, yet, if they further believed from the evidence that the plaintiff, by the exercise of ordinary care, could not have discovered that the cable was defective, the risk of being injured as a result of the breaking of the cable was assumed by the plaintiff, and that in that respect the jury should find for the defendant. Further instructions for defendant were that defendant was not the insurer of decedent's safety at the time and place he was killed; that defendant did not owe him the duty to furnish him with an absolutely safe place in which to work, or safe tools, appliances, or instrumentalities with which to work, and that if the jury believed from the evidence that the cable was in a reasonably safe condition for the purpose for which it was being used, the jury must find for defendant, even though they might believe that decedent was killed, and that he could not have been killed if said cable, at the time he was killed, had been in absolutely safe condition; that defendant was under no duty to decedent to make an inspection of the cable, such as would absolutely and with certainty discover any defect in said cable, if the jury believed there was such defect; that defendant was not liable for latent defects in any of its tools or instrumentalities which could not be disclosed by a reasonable inspection by a reasonably competent inspector; that the only duty resting on defendant in respect to inspecting said cable was that it should make such inspection with a competent

inspector with reasonable frequency, and that it should, in making such inspection, exercise reasonable and ordinary care, that is to say, it should, both as to frequency and character of inspection, make such inspection as a reasonably prudent person would make under similar circumstances for the purpose of discovering defects in said cable, if any existed; that, if the jury believed from the evidence that the defendant made such inspection, and did not discover the cable was defective, they must return a verdict for defendant, even though the jury may believe that the cable was in fact defective, and that such defects would have been discovered by a more careful or more detailed inspection, and even though the jury may believe from the evidence that the decedent was injured and killed as a result of the cable being defective.

It is familiar learning that all of the instructions are to be construed together, and, if, when so construed, they fairly state the law, the judgment will not be reversed, even though there may be slight inaccuracies in particular instructions.

Viewing the instructions as a whole, we think the law was fairly announced, and the judgment will be affirmed.

*Affirmed.*