# Edward Hines Lumber Co. v. Dickinson.

(Division B.   Dec. 9, 1929.)

[125 So. 93.   No. 28008.]

T. J. Wills, of Hattiesburg, for appellant.

Currie & Currie, of Hattiesburg, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

S. C. Dickinson sued the Edward Hines Lumber Company for personal injuries. The declaration charged that the plaintiff was employed by the defendant as a saw filer helper, and that the defendant required him to help change the saws and gauge them so as to keep them up to the standard in every respect for the cutting of logs into lumber. It was further alleged that the floor upon which he was required to stand and to walk in pursuance of his duties was permitted to become greasy, slippery, and accumulated with trash, which resulted in his falling to the floor by slipping and being injured by suffering a hernia.

The defendant pleaded the general issue, denying all the facts in the declaration. There was a judgment for the plaintiff from which this appeal is prosecuted.

The first contention of the appellant is that the appellee was not employed by the Edward Hines Lumber Company, but that he was employed by one Tatum, who, it is claimed, was an independent contractor, and who hired the appellee and paid him, and had power to employ and discharge his help. The appellee claimed that he was hired by the Edward Hines Lumber Company and was subject to the control of that company, and that he paid seventy-five cents per month for medical and hospital fees, which amount was taken out of his wages for part of the hospital and medical services furnished by the Edward Hines Lumber Company. He further testified that he was paid weekly by Mr. Tatum. It was in the proof by the company that Mr. Tatum was hired for twenty-eight dollars a day to keep the saws in the proper condition, and that he had helpers to assist him in this

work, but that the twenty-eight dollars a day was paid him, and from it he paid such helpers as he employed or needed, and that he was the judge of the help employed.

The general foreman of the mill testified that, when dust accumulated on the floor where the filing work was done, it was the duty of the saw filer to keep the station clean; that each shift should keep the floor clean; and that they did not have a general clean-up man for the saw-filing department.

Mr. Tatum, the person employed by the company to keep the saw-filing department in condition and the saws sharpened, stated that he was under contract to keep the saws filed and to keep the saws up; that the company did not have a clean-up man in the saw-filing department; that it was not the duty of any clean-up man of the company to keep the saw-filing room clean; and that his duty as such contractor and his helpers was to keep that floor clean. He testified that he paid Mr. Dickinson, and that he hired his own help, and the company had nothing to do with paying them; they being paid out of the twenty-eight dollars a day.

The general foreman testified as follows:

"Q. If he didn't keep it clean what was the result, Mr. McKeown? A. I'd probably come through the next morning, and see it and mention it to Tatum and have somebody get busy and clean it up; we have inspectors come in and we have one of our own that inspects all parts of the plants for hazardous places and dirt and they require us to keep it clean whether we want to or not.

"Q. If they didn't what would they do? A. Get a new superintendent or general foreman.

"Q. Is your job to see that it's kept clean? A. Yes, sir.

"Q. If Mr. Dickinson refused to sweep it up at night while he was on the job what would happen to him? A. Get somebody to take his place. . . .

"Q. All of the authority is vested in you? A. My orders go to Mr. Tatum."

Mr. Tatum, the sawmill filing foreman, also testified:

"Q. What would have happened if you didn't kept this room cleaned up? A. They would discharge me.

"Q. Now what happened, you say Mr. Dickinson didn't seem to clean it up at night, what happened to him? A. I had to do that to him.

"Q. Discharge him? A. Yes, sir, had orders to that effect. . . .

"Q. You say Mr. McKeown had you to fire Mr. Dickinson? A. He told me it would be a good idea to.

"Q. And you did? A. Yes, sir.

"Q. Well, you did it because he told you to do it? A. Yes, sir, he was my boss.

"Q. You are subject to the orders of Mr. McKeown? A. Yes, sir."

There was considerable more of this testimony, and we have carefully examined it in determining whether the appellant was entitled to a peremptory instruction upon the theory that Tatum was an independent contractor and that the appellee was employed by him. The question was submitted to the jury under appropriate instructions for the finding of what constituted an independent contractor, and the jury, by its verdict for the plaintiff, found the fact to be that Tatum was not an independent contractor, but an employee of the Edward Hines Lumber Company, subject to its control and orders. We recognize the rules upon this subject as announced in Hutchinson-Moore Lumber Co. v. Pittman (Miss.) 122 So. 191, and the authorities cited therein, but we think it was a question for the jury, on the fact stated in this record, to determine whether Tatum was an independent contractor or not. There is some of the testimony which would make the case one of an independent contractor, but in other parts of the testimony of the same witnesses there are statements which would not make him an in-

dependent contractor. It appears from Tatum's testimony, taken altogether, that he was subject to the orders of the company, and that the general mill foreman was his boss. The jury had before it the testimony of all the parties and all the facts, and we think there was sufficient testimony to sustain their finding upon this proposition, and the court did not err in refusing the peremptory instruction asked by the defendant. The plaintiff asked for a peremptory instruction that Mr. Tatum was not an independent contractor, which was refused, and we think properly. On the whole testimony, we think it was a question for the jury upon this proposition.

It is next assigned as error that the court erred in giving certain instructions for the plaintiff. The first one complained of is that the law imposed upon the defendant the duty to furnish the plaintiff a reasonably safe place in which to do the work required of him, and to exercise reasonable care to keep and maintain the same in a reasonably safe condition, and that this was a nondelegable and continuing duty, and, if the defendant delegated to another the duty to keep the place plaintiff was required to work in a reasonably safe condition, and such a servant or agent of the defendant negligently failed to perform this duty, such failure was chargeable to the defendant, and the defendant would be liable to the plaintiff for any injury or damage resulting proximately in an injury. The court further charged the jury for the plaintiff that, under the law, the plaintiff did not assume the risk of being injured as a result of any negligence on the part of the defendant; even though the jury might believe from the evidence that the plaintiff appreciated the fact that the place where he was required to work was oily, and was covered with sawdust, trash, and debris, and that such condition rendered the place where he was required to work unsafe, that the plaintiff did not assume the risk of being injured by reason of this con-

dition, if they believe from the evidence that the defendant was negligent in permitting the floor or place where plaintiff was required to work to be in such condition. The court further charged the jury for the plaintiff that, in all actions for damages and personal injuries by servants against the master, contributory negligence on the part of the servant does not bar a recovery for injury or damages inflicted as a proximate result of negligence on the part of the master, and, if the jury believe from the evidence that the defendant negligently failed to furnish and failed to keep the place where the plaintiff was required to work in a reasonably safe condition, and that the plaintiff received the injuries complained of as a proximate result, it was the duty of the jury to find for the plaintiff, although they may believe from the evidence that the plaintiff was also guilty of contributory negligence.

There was considerable testimony in the case that it was the duty of the plaintiff, as a part of his employment, to keep the room swept and cleaned up and in proper condition. If that was true, and if the injury resulted from his failure to perform his duties, his negligence could not be attributed to the master, the company. A person cannot profit by his own wrong, and, where he is employed to make a place safe or to keep a place safe as a part of his employment, and negligently fails to do so, he cannot attribute his own negligence to the master and thus profit by his own wrong. Hooks v. Mills, 101 Miss. 91, 57 So. 545; Hegwood v. J. J. Newman Lumber Co., 132 Miss. 487, 96 So. 695; Waterman-Fouke Lumber Co. v. Miles, 135 Miss. 146, 99 So. 759.

An examination of the instructions given shows that this principle was ignored. The idea carried in the first instruction stated that it was the duty, and a nondelegable duty and a continuing duty upon the defendant, and, as phrased in the instruction, would carry to the

nonlegal mind, such as the jury for whom it was given, the idea that it did not make any difference whether the plaintiff was negligent or not in the performance of his duties, if the defendant was under a continuing duty to furnish a safe place and did not do so. Nowhere does it inform the jury that the negligence of the plaintiff could not be attributed to the defendant under such circumstances, and that a party could not attribute his own negligence to his master. This principle was not given in any of the instructions in the case, and the same is true of the instruction upon the assumption of risk. It would be true as an abstract proposition that the plaintiff did not assume the risk of the negligence of his master, but, where the negligence of the master must be traced through the plaintiff, then the proposition is not true, and, as stated above, there was ample evidence to show that it was the duty of the plaintiff to keep the room cleaned up and in a safe condition, and, if it was his duty and he did not do so but performed his work under unsafe conditions, brought about through his own neglect or negligence, it could not be attributed to the master. In other words, if the defendant's theory upon this proposition was true (that is to say, it was the duty of the plaintiff to keep the room clean and in a reasonably safe condition, under his contract), the master had a right to rely upon him, so far as any damage or injury to him is concerned, to keep the place in suitable and safe condition.

The third instruction, informing them that contributory negligence of the plaintiff was not a bar for recovery if the master was negligent, is subject to a like infirmity, and is misleading, in that it carries the idea, in the case before us, that, although the plaintiff might have been guilty of negligence contributing proximately to his injury still it would not bar his recovery if the master was negligent. This, taken in connection with the first in-

struction, stating that the duty of the master was a non-delegable duty is calculated to mislead the jury. We recognize the rule fully, as has been repeatedly announced in this court, that all of the instructions are to be taken together and read as a whole, one as modifying, supplementing, or explaining another; and, if they are so taken together, the court will not reverse for a mere error in a single instruction. Haynes-Walker Lumber Co. v. Hankins, 141 Miss. 55, 105 So. 858; Lamar Hardwood Co. v. Case, 143 Miss. 277, 107 So. 868; Gibson v. Wineman, 141 Miss. 573, 106 So. 826; Cranford v. Maryland Casualty Co., 149 Miss. 345, 115 So. 586; Alabama & V. Railroad Co. v. Fountain, 145 Miss. 515, 111 So. 153. The application of this doctrine in the present case does not cure the error in the instruction given, because in none of the instructions was the jury informed that the negligence of the plaintiff could not be attributed to his master, the defendant. In this case the jury was not instructed that it was its duty to take the instructions and consider them altogether, one as modifying, supplementing or aiding the other, and the instructions are not harmonious within themselves. As stated, there is an entire absence of informing the jury of the principle that the plaintiff cannot profit by his own negligence, and that he cannot attribute his own negligence to the master and thus hold the master liable and escape the consequences of his own negligence.

For this error in giving these instructions, judgment must be reversed, and the cause remanded for a new trial.

Reversed and remanded.