NEWELL CONTRACTING CO. *v.* FLYNT.

(Division B. May 6, 1935.)

[161 So. 298. No. 31712.]

720

(Division B.   June 3, 1935.)

[161 So. 743.   No. 31712.]

. **Watkins & Eager,** of Jackson, and **J. B. Sykes,** of Mendenhall, for appellant.

Edwards & Edwards, of Mendenhall, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant was a road contractor, and in the pursuance of that work several carloads of gravel were delivered to it by rail at the railroad depot in Braxton, in Simpson county. These cars were unloaded by a steam shovel, as a result of which considerable quantities of gravel would fall upon the railroad track at the place of unloading. On the occasion in question, appellee, an employee of appellant, was directed by a foreman of appellant to remove the gravel from the railroad track by the use of an instrumentality called in the declaration and evidence a "friznose," but of which a sufficient description is given that we know it was a fresno scraper, the construction and general use of which is detailed in the larger dictionaries and other standard books of general

reference. The declaration avers: ''That in obedience to the command of said foreman, plaintiff operated the machine propelled by mule power as directed by said foreman and was in the act of scraping up the gravel which had fallen between the rails or steel tracks of said railroad when the blade of said machine caught upon a cross-tie and was fastened or held, jerking plaintiff who had hold of the handle of said machine, in an upright manner very violently and with such force and momentum that he was lifted approximately two or three feet from the ground, wrenching his back,'' etc. And the declaration continued: ''That the proximate cause of the injury aforesaid was the gross negligence of defendant who directed plaintiff . . . to scoop or scrape the gravel from between the rails of said railroad tracks which were covered with gravel; and the cross-ties being covered with gravel and hidden from view of plaintiff and were uneven and projected at uneven lengths under said gravel; and the place and method used by defendant aforesaid constituted a dangerous method and unsafe place for plaintiff to work; that the sharp edge of the scrape coming in contact with the cross-ties hidden with gravel would necessarily cause the machine to jerk violently; that the mules could not be stopped so as not to hit the cross-ties, for the reason that it was impossible to know when to stop them as the cross-ties were not visible; that plaintiff was ignorant of the condition of the surface under the gravel which constituted the upper part of said roadbed and he was ignorant of the true condition of the cross-ties; that defendant knew the condition of the surface of said roadbed before the gravel was thus deposited or should have known by the exercise of ordinary care and caution and diligence; that there were other methods of removing said gravel which would have been safe.''

For the reason hereinafter to be stated, the question now before the court is whether the declaration states

a cause of action. Appellee insists that it does, and in his argument he states that he bottoms his case upon the proposition that the master failed to furnish him a safe place to work. Appellee says in his brief: "The law is that a master impliedly warrants the safety of the place at which the servant works and the law so advises the servant when he enters upon his work." This statement would be somewhat startling were it for the first time now asserted. The fact is, however, that briefs and arguments heretofore made in other cases disclose that such an impression seems to prevail among many of the bar, although it has been often announced by this court that the duty of the master in that regard is not an absolute duty, but is simply to use reasonable care to furnish the servant with a reasonably safe place to work. Gulfport Creosoting Co. v. White (Miss.), 157 So. 86, 87; Columbus & G. R. Co. v. Coleman (Miss.), 160 So. 277, 278, 279.

It is not asserted that a railroad track is such a place, when considered alone, as not to be a reasonably safe place to work, and if it were so asserted, we would be compelled to deny it as a matter of common knowledge. Thousands of men work every day throughout the country in section crews on railroad tracks. It is not asserted that the fresno was in any way defective or out of repair; nor is it shown that the fresno, when alone considered, is an unreasonably dangerous instrumentality. It is an appliance in common use in this state, particularly in road work, where hundreds, if not thousands, of workmen use them every workday.

The case of appellee, if he have a case, is not of an unreasonably safe place, nor of an unreasonably unsafe appliance, but rather must be, if at all, that he was furnished with and directed to use an instrumentality which, beyond reason, was unsuitable and improper for the doing of the particular work then and there to be done. In its last analysis unsuitability of instrumental-

ity is the equivalent of an unsuitable method or means, as to which the same rule of practical reason, measured by modern standards and modern requirements of efficiency and dispatch of work, prevails as applies to reasonably safe places to work or reasonably safe tools; and "the rule is established practically without dissent that the master is not liable where he observes and follows the usual and customary method or system generally employed by careful and prudent men engaged in the same business, unless . . . the unreasonable unsafeness in the method or system is so evident that impartial persons could not well be in disagreement upon the issue." Hammontree v. Cobb Const. Co., 168 Miss. 844, 852, 152 So. 279, 281.

And since, as we have already observed, the fresno is in common use throughout the state for scraping up earth, sand, and gravel, there is raised, by such general use, a presumption of reasonable safety, which makes it incumbent upon him who declares upon its unsafeness or unsuitability, in a particular use to allege and show that the general use does not extend to the particular use in question, together with the factual reasons therefor, Mitchell v. Brooks, 165 Miss. 826, 828, 147 So. 660, or that if it does, then the facts must be so fully disclosed and in detail that it may be said therefrom that the means or method is so extrahazardous that impartial persons could not well be in disagreement upon it.

The declaration is silent upon these essential matters. It does aver that the cross-ties were buried beneath the gravel, that the plaintiff was ignorant of this, and that the defendant knew or ought to have known of it. But it is a matter of common knowledge that cross-ties lie immediately under the rails in railroad tracks. Every workman working on a railroad track knows that fact and it avails nothing to aver to the contrary; and he knows also, and so does the master, that in using a fresno between the rails on a railroad track the scoop or blade

may possibly come in contact with a cross-tie, causing the handle of the fresno to fly up. However, this fact alone does not dispose of the matter favorably to an employee injured thereby; for, from the very nature of the construction and use of the fresno, it is inevitable, wherever it is being used, that the blade or scoop will more or less often come in contact with concealed objects under the earth or sand or gravel which is being scraped up and that this will cause the handle to fly up, sometimes violently. If this characteristic of the fresno condemns its use, then its use everywhere must be condemned, which we cannot do.

And this brings into view another essential feature upon which in determinative factual details the declaration is silent. The fresno scraper is not only in general use now, but has been for some time. No case that any of us here can now recall has heretofore come to this court involving an injury caused by a fresno. If there had been many such injuries, it would be a certainty that some such case would have come up here. Moreover, it is reasonably certain that if the fresno were unreasonably dangerous, when carefully used by the workmen, our highway authorities would not permit its use on public projects. We are, therefore, warranted in the assumption that such injuries are rare, and this in turn requires the inference that workmen, when exercising the care which the law requires of them, can and do use these machines in such a way that when an obstruction under the surface is struck and the handle flies up the workmen is still not hurt. How is it that this workman was hurt when hundreds of others using the fresno day after day are not hurt? He does not state the facts in detail upon this vital issue. He states only that the scoop struck a cross-tie, the handle flew up and he was hurt.

The law is that the master is as much entitled to expect that a servant will exercise reasonable care in the use

and operation of a tool or appliance in the normal manner to avoid injury as the servant is entitled to expect that the master will use reasonable care to furnish him a reasonably safe tool or appliance. 39 C. J. 824, section 1038. When the law speaks of reasonable safety in a tool or appliance, or in a place to work, it means one which can be safely employed when the servant takes reasonable care in its normal use or operation. If this were not so, nearly all modern labor-saving and time-saving devices would be condemned; and danger, not practicalities, would become the controlling test, which is not the law. Seifferman v. Leach, 161 Miss. 853, 858, 138 So. 563; Brown v. Coley, 168 Miss. 778, 783, 152 So. 61; Hammontree v. Cobb Const. Co., 168 Miss. 844, 854, 152 So. 279. If danger were the test, which fortunately it is not, the fresno would have to be discarded for the shovel and the hoe, railroad trains and motortrucks would be prohibited, and we would return to the days of the ox wagon and the cart.

The present declaration does not sufficiently state a cause of action. Compare Columbus & G. R. Co. v. Coleman (Miss.), 160 So. 277, 278. We are not convinced, however, although encompassed by the difficulties which we have mentioned, that it cannot be amended. We, therefore, return the case to the trial court so that plaintiff may amend, if he can.

In the trial of the case plaintiff went considerably further in the introduction of testimony than the allegation of his pleadings would permit, and in material respects. In each and every instance where the evidence offered went beyond the pleadings, the defendant promptly objected, which objections were in most instances overruled by the court. We have considered, as we were obliged to do, only the case made by the pleadings; for it is elemental that a judgment or decree based in whole or in a material part upon facts not set up in the pleadings on either side and which, therefore, were not in issue

under the pleadings, is erroneous for that reason alone, and will be reversed, unless, of course, the evidence of such facts was received without objection. If this were not the rule, pleadings might as well be dispensed with and cases tried simply on a summons to the defendant to appear and answer to an action which the plaintiff will orally state, and for the first time when the case is put on trial.

Reversed and remanded.

## On Motion to Correct Judgment.

**Griffith, J.,** delivered the opinion of the court on Motion to Correct Judgment.

On a former day the judgment in the above entitled and numbered cause was reversed and the case remanded with leave to the plaintiff, appellee, to amend his declaration; and now the appellant moves that our judgment here be corrected so as to enter final judgment for the appellant; and appellant cites section 3378, Code 1930; Scottish Union & Nat. Ins. Co. v. Warren-Gee Lbr. Co., 104 Miss. 636, 61 So. 310; Hattiesburg, etc., Co. v. Price, 143 Miss. 14, 108 So. 291; Henry v. R. R. Elkin, Jr., & Co., 156 Miss. 136, 125 So. 545; Fowlkes v. Hardin, 109 Miss. 318, 68 So. 468; Brenard Mfg. Co. v. Brown, 152 Miss. 319, 120 So. 182.

On the trial in the circuit court appellant did not demur to the declaration, but filed a plea of the general issue, and, on the taking of the evidence, appellant objected to anything which went beyond the allegations of the declaration, and at the conclusion of plaintiff's evidence requested a peremptory instruction, on the ground that the evidence which went no further than the allegations of the declaration was not sufficient to make out a case, which is the equivalent, of course, to a demurrer to the declaration. The objections by appellant to the

evidence which went beyond the declaration were over-ruled by the court, the peremptory instruction requested by appellant was refused, there was a verdict and judgment for the plaintiff, and on the appeal we held that the objections to the evidence which went beyond the declaration should have been sustained, and that the declaration was not sufficient to support a cause of action; and, as above stated, we remanded the cause with leave to amend the declaration.

When a declaration does not sufficiently state a cause of action, the defendant may demur to it. If the demurrer be sustained, the plaintiff has the right to amend, if he have an amendable case. Hall v. Stokely, 156 Miss. 673, 126 So. 475. If the demurrer be overruled, then the defendant must plead and go to trial. During the trial, he must object to any evidence which overruns the averments of the declaration, and at the close of plaintiff's evidence must move for a peremptory instruction which is to evidence the fact that he has not waived his previous formal demurrer by anything that has happened during the trial. When the objections made by the defendant are overruled by·the court and· his request for a peremptory instruction is denied, and there is a verdict and judgment against him, and he appeals, our first inquiry here is whether the declaration is sufficient, and if we decide that it is not sufficient, we sustain the demurrer as the trial court should have done, and return the case that the plaintiff may amend, just as would have been the situation had the trial court sustained the demurrer.

But instead of filing a formal demurrer to an insufficient declaration, the defendant has the option to do as the defendant did in this case, namely, to plead to the declaration, go to trial, object to anything running beyond the declaration, and, at the close of plaintiff's evidence, move for a peremptory instruction, which, as we have above stated, is the equivalent of a demurrer

to the declaration; and when all these have been overruled by the court and there is a judgment for the plaintiff, and the defendant appeals, our first question here is whether the declaration is sufficient, and, if not, we must reverse and remand, with leave to amend the declaration, just as if there had been a demurrer to the declaration and that demurrer had been sustained in the first instance in the trial court, unless the case be such that it is apparent upon the face of the record that the plaintiff cannot amend, as was the case in Hines v. Cole, 123 Miss. 254, 85 So. 190. By taking the course outlined in this paragraph, the defendant cannot obtain an advantage over the plaintiff which the defendant would not have secured had he followed the regular and more orderly procedure of demurring in the first instance to the insufficient declaration.

Motion overruled.