# Dr. Pepper Bottling Co. *v.* Gordy.

(Division A. Nov. 18, 1935. Suggestion of Error Overruled Jan. 6, 1936.)

[164 So. 236. No. 31913.]

Butler & Snow, of Jackson, for appellant.

Broom & Shipman, of Jackson, and Swalm & Swalm, of Brookhaven, for appellee.

Argued orally by **C. B. Snow**, for appellant, and by **Stewart Broom**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellee, Gordy, sued the appellant, the Dr. Pepper Bottling Company, for damages for personal injuries sustained by him in a motortruck wreck. A substantial verdict was rendered by the jury, judgment thereon was entered by the court, motion for a new trial was overruled, and appeal is prosecuted here therefrom.

The declaration was in two counts, one sought a recovery from the appellant on the ground of the negligence of its servant, the driver, in the operation of the motortruck. This count was disposed of in the lower court by a peremptory instruction in favor of appellant after all the evidence was in, and no appeal is prosecuted here from that action of the court. The second count charged negligence of the appellant in that the motortruck was then and there equipped with defective, unsound, and unfit brakes, which fact was then and there well known to the appellant, or by the exercise of reasonable care and inquiry might have been so known to it, but was unknown to the appellee, and on this count the cause was submitted to the jury.

The facts necessary to state are about as follows: At the time of the alleged injury, the Dr. Pepper Bottling Company was engaged in the business of manufacturing, bottling, and selling a beverage, and in transporting and delivering its product to retail dealers in various places in this state. These deliveries were usually made by the use of motortrucks. Gordy testified that at about five o'clock in the afternoon of February 21, 1934, he was injured in a motortruck wreck about twenty miles south

of Jackson on United States highway No. 49, as he and the driver of the truck were returning to Jackson. Appellee had been in the employ of the appellant since 1932, and at first had been employed as a "motortruck salesman," transporting the beverage in the motortruck, selling and delivering it. At the time of the injury Gordy had ceased to be a "motortruck salesman;" he then traveled in his car and took orders for the company but did not usually make deliveries. At this time Dorman was the driver of the truck and was the truck salesman. The manager of the company, being dissatisfied with results obtained by Dorman in sales of the product, instructed Gordy to accompany Dorman on his route from Jackson to Magee and investigate and stimulate sales. In pursuance of these instructions, Gordy, in company with Dorman, left Jackson on that morning in the motortruck; after they left town Dorman delivered the products of the company to his customers on the route, and Gordy interviewed customers and prospective purchasers.

Gordy testified that he noticed that when Dorman put on the brakes the truck swerved, and that this occurred while they were on their way down to Magee in the morning; that something was wrong, and that he remarked about it to Dorman. How many times the truck swerved is not stated. He further testified that as they were returning to Jackson they met a car coming in the opposite direction from that in which they were going, and in passing Dorman checked the truck, and that was the last thing he remembered until he was getting up. Gordy stated: "I observed him apply the brakes and I could feel it swerving. . . . That is all that I know that happened—I do not—did not remember anything else, until I was getting up out of the ditch." Appellee testified that the truck had changed ends as it turned over an embankment and had fallen on the left-hand side of the road, and that "the motor was headed back to Magee." At the time of the injury, Dorman was driv-

ing about thirty-five miles an hour and had reached a slight left-hand curve on a gravel road. A slow drizzling rain had been falling all day and the road was wet. Gordy was thrown from the truck, rendered unconscious for a brief time, and when he regained consciousness Dorman was running up and down the road crying, and the witness was permitted to testify that Dorman said then, ''I knew that it was going to happen.'' Other declarations by Dorman were excluded by the court. Gordy secured a flash-light and examined the ground and said, when questioned as to signs on the highway, ''you could see where the car turned and toppled over and turned over in the middle of the road and slid into the ditch, is the only way it could have been done. . . . I observed the place where the brakes were applied; just dug a hole as the car turned over, and we observed the brakes—where they had skidded on one side.

''Q. Where one side of the brakes held and the other side did not? A. Yes sir, and we observed the torn up place in the road where it had undoubtedly turned over and toppled over into the opposite side.''

Several days passed before the appellee realized that he had sustained any injury to his left leg. His physician testified, in effect, that his left leg was wasting away, that his injury was permanent, and that it might have been caused by this accident.

At the conclusion of the appellee's evidence the appellant moved the court to exclude it and direct a verdict for it (the appellant), which was overruled.

Thereupon Dorman, the driver, testified that he and Gordy made the trip as detailed in the motortruck; that he was an experienced driver and had been for about twelve years; that there was a considerable curve at the place where the wreck occurred; that there was no defect in the brakes; that they were working; that during the day and prior thereto he had observed nothing wrong; that the truck was loaded but not overloaded;

and that: "I made the curve all the way around and there was a car meeting me and it looked like that he was taking the majority of the road from me and I cut too close to the edge of the road, as I possibly could, without going into the ditch, and when I seen that I was going into the ditch I drove a little to the right and put on the brakes.

"Q. And then what happened to you? A. I turned over.

"Q. When you hit the loose gravel you put on the brakes, and she turned over did she? A. Yes sir."

The mechanic regularly employed for a number of years by the appellant testified that about a week or ten days before this accident he had thoroughly overhauled and repaired the truck regularly used by Dorman, including the motor, the woodwork, and had relined the brakes with proper lining, and that he instructed the driver that after he had operated it for about thirty days it would be necessary to inspect the brakes again to see that the lining was working properly.

The manager of the company testified that the truck was a 1928 or 1929 model, that the repair work was done properly by his regular motor mechanic, and that he had no information that there was anything wrong with the truck or any of its appliances. He immediately went to the scene of the wreck and discovered loose wet gravel where the accident occurred. All the witnesses for the appellant who testified on that subject said that the truck and its brakes were in good condition.

The main and only assignment of error we deem necessary to consider is the contention that the peremptory instruction in this case should have been granted for the reason that the evidence shows no defect in the brakes. There was no effort to show the nature of the defect, and the proof fails to show that the master had knowledge, actual or constructive, of the defect, if any, in the brakes at the time of the injury.

The relation of master and servant existed between the appellee and the appellant. The burden of proof, therefore, was upon the appellee to prove that his injury was proximately caused by a defect in the brakes, the nature of the defect, and that it was such as might have been ascertained by the exercise of reasonable care on the part of the master. The only evidence in this case to show any defect whatever was the fact that the truck swerved on occasions, and in appellee's opinion this swerving was caused by defective brakes, when they were applied by the driver. These are deductions of the witness, and his statement that the truck swerved, and that he felt it check when the brakes were applied, are not inconsistent with the statement of the driver that he applied the brakes to prevent going into a ditch, and thereupon his truck changed ends and turned over, the speed of the truck being estimated at from thirty to thirty-five miles an hour on a road covered with gravel on which it had been raining all day. It is just as fair a guess to say that the steering wheel did not function, or that the tires of the truck were inflated too much, or not enough. In fact, this is simply an accident, the cause of which, under the circumstances, is not known. The nature, character, and existence of the defect is left entirely to conjecture. See Gulfport Creosoting Co. v. White, 171 Miss. 127, 157 So. 86. The master is in no sense an insurer of the safety of an instrumentality furnished to a servant with which to work. Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277. It cannot then be said that the master was negligent in that he failed to exercise reasonable care to discover a defect, when there is nothing in the evidence as to the fact of a defect, the kind of defect, nor anything leading directly to any particular defect. A mere suspicion is not sufficient to make out a case or to sustain a verdict. New Orleans & N. E. R. Co. v. Holsomback, 168 Miss. 493,

151 So. 720; Illinois Cent. R. Co. v. Cathey, 70 Miss. 332, 12 So. 253.

This case is very similar to the case of Hattiesburg Chero-Cola Bottling Co. v. Price, 141 Miss. 892, 106 So. 171, and is not controlled by Luckett v. Louisiana Oil Corporation, 171 Miss. 570, 158 So. 199, in which this court held that courts may judicially notice those prominent facts regarding automobiles and trucks which are so distinctly capable of intelligent observation as to be safely regarded as certain and indisputable facts to all persons of average understanding and with average opportunities of observation. In the Luckett case, the evidence showed that the steering wheel of a motor car was loose to the extent that it had a play of from three-fourths to an entire turn of the wheel, and that such had existed for a time amply sufficient for a reasonable inspection by the master. The proof is uncontradicted in this case that prior to said morning Dorman and Gordy embarked upon ths trip this motortruck was in perfectly safe condition, and especially so as to its brakes. The known defect in the steering wheel in the Luckett case was pointed out; not so in the case at bar. There is no fact proven here upon which to base the doctrine of judicial notice.

It is contended, however, that the prima facie statute in the Motor Truck Act should carry this case to the jury. There is no question in this case but that the relation of master and servant existed between the appellant and appellee, and that the declaration and proof is based upon that fact, in which event the prima facie statute cannot be invoked by the servant as against the master—he is remitted to the common law under previous holdings of this court.

Section 5575, Code 1930, contains this pertinent language: "Every motor vehicle while in use on the public highway . . . shall be equipped at all times with at least two independent and effective brakes." The proof

in the case at bar shows that this truck was equipped with four-wheel brakes, and of course that means a brake on each wheel. Counsel for appellee say that one of these brakes was not effective. We do not know from this record which brake held effectively, or which too effectively, or of what the defect consisted.

Section 5588, Code 1930, contains a prima facie statute as follows: "And in any action brought to recover any damages, either to person or property, caused by running or operating such motor vehicle in violation of any of the provisions of this chapter, the plaintiff or plaintiffs shall be deemed to have made out a prima facie case by showing the fact of such injury, and that such person or persons operating, or causing to be run or operated, such motor vehicle, was at the time of the injury running or operating, or causing the said motor vehicle to be run or operated in a manner contrary to the provisions of this chapter."

The first prima facie statute as to railroads in this state is article 43, chapter 35, Code 1857. In the case of New Orleans, J. & G. N. R. Co. v. Hughes, 49 Miss. 258, it was argued that the statute furnished a rule with regard to negligence which withdrew the case from the analogy of the common law. The court held otherwise, and, further, that the statute did not embrace the agents and employees, but that they must stand upon their common-law rights. Section 1059, Code 1880, a prima facie statute, was held by this court in Chicago, St. L. & N. O. R. Co. v. Trotter, 60 Miss. 442, not to apply in suits by persons standing in the relation of contract with the carriers; a passenger would stand upon the contract and the common law and could not rely upon the prima facie statute. The same rule was applied in Short v. New Orleans & N. E. R. Co., 69 Miss. 848, 13 So. 826, as to employees. The prima facie statute found as section 1808, Code 1892, in the case of Yazoo & M. V. R. Co. v. Humphrey, 83 Miss. 721, 36 So. 154, was held not to apply to a

passenger. Thereafter, by section 1985, Code 1906, there was added to the statute, "this section shall also apply to passengers and employees of railroad companies." The c motor vehicle prima facie statute here invoked contains no such provision as is now found in section 1580, Code 1930, as to passengers and employees, and therefore is not available to appellee in the case at bar.

Dorman and Gordy both being servants of the master, and riding in the truck at the time of the alleged injury, cannot avail themselves of the motor vehicle prima facie statute; they must stand upon their common-law rights. We are, therefore, of the opinion that the appellee failed to show any negligence attributable to the master in this case, any defect in the brakes, or a want of reasonable inspection thereof.

We are further of the opinion that the evidence does not warrant the fair inference that there was a defect in the brakes, nor did the master have actual or constructive knowledge of any defect. The master was not negligent in the matter of inspection. As announced by this court in Gulfport Creosoting Co. v. White, 171 Miss. 127, 157, So. 86, 89, the rule is: "The master is not required to make an examination of a tool before each and every operation thereof. The rule in that respect, as in all others, is one of reason; and if an inspection and examination were required before each and every separate operation of a particular tool, it would necessitate the constant attendance of two men, one to operate the tool and the other to constantly examine it. Such would be an unreasonable requirement, and is not the law. 39 C. J. 420." This would seem to be especially applicable to automobiles and motortrucks.

The peremptory instruction requested by the appellant should have been granted.

Reversed, and judgment here for appellant.