EAGLE COTTON OIL CO. *v.* SOLLIE.

(Division B.    March 27, 1939.)

[187 So. 506.    No. 33630.]

Jacobson & Snow, of Meridian, for appellant.

Reily & Parker, of Meridian, for appellee.

Argued orally by **E. L. Snow**, for appellant, and **Marion Reily**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

The appellee, Sollie, brought this action against appellant, Eagle Cotton Oil Company, in the circuit court of Lauderdale county to recover damages for an injury received by him while in the service of the oil company, alleged to have been caused by the negligence of the company in failing to furnish him a reasonably safe instrumentality with which to do the work he was employed to do. There was a verdict and judgment in his favor in

the sum of $5000, from which judgment the oil company prosecutes this appeal.

The only question in the case is whether the court should have granted the oil mill's request for a directed verdict. . In considering that question every material fact necessary to support the judgment should be treated as proven, which the evidence substantially tends to prove.

Sollie was injured in July, 1936. At the time of his injury the oil mill was shut down for repairs and he was engaged in repair work, for the doing of which he was employed. He had been all his adult life a carpenter. In addition, he was a millwright. He testified that he was a master carpenter and a skilled millwright. He had been in the service of the oil company since 1930—about six years. It was his duty to be on the lookout for defects in the ways, means, and appliances of the mill, and remedy such defects without being specifically directed to so do by anyone in authority. At the time of his injury he was engaged, with a negro helper named Mitchell, in repairing the elevator head in the "huller room." He fell from where he was at work about twenty feet to the concrete floor below, and was seriously injured. The character of his injury necessitated his being carried to a hospital, where he remained about three weeks. After he had sufficiently recovered, he went back to work for the oil company and so continued about two years before this suit was brought. Soon after his injury, on being questioned by some of the officers of the oil company as to what caused it, he stated that he did not know. In his testimony in the case, he admitted that he made such a statement but did so because he thought if he told the truth about it, it would jeopardize his job. The "huller room" has a concrete floor and the overhead structure is supported by piers about twenty feet in height, and ten inches square, on which rests at the top stringers about ten inches square and of the required length. The elevator head being repaired is in the top of the structure.

There are three piers. About halfway between the concrete floor and the top of the piers is a walkway supported by braces attached to the piers, and at the top of the piers is another walkway. These walkways were used by servants engaged in repair work. As a means for reaching the walkways, one of the piers had been made into a ladder in this manner: Rungs had been nailed on it from near the concrete floor to the top stringer—a distance from eighteen to twenty feet. These rungs were something like an inch and a half thick, three inches wide, and three and a half feet long. They were nailed across the pier about sixteen inches apart and projected on each side from twelve to fourteen inches. They were not mortised into the pier but were nailed on with nails of appropriate sizes. The ladder so constructed had been in use for a good many years. Sollie testified that he had used it in making repairs during the entire period of his employment. He admitted that he used it the day before his injury, and saw no loose rungs. On the day of his injury he climbed the ladder to the second walkway to make repairs on the elevator head. His helper, Mitchell, was standing below on the concrete floor. He decided to come down to the floor for some purpose connected with the work. He testified that in making the descent he stepped on the top rung which gave away under his weight, throwing him to the concrete floor causing his injury. Mitchell, the only eyewitness, testified that no such occurrence took place, that the rung did not give away, but for some reason Sollie lost his balance and fell. Sollie admitted that in making the ascent the rung appeared to be secure and that on no other occasion had he noticed that any of the rungs were loose. Only a little while after his fall and injury, the scene was viewed by certain officers and employees of the oil company. They testified that there was no rung lying on the floor, nor any loose rung attached to the pier. Scott, the superintendent, testified that there had been a rung at the top of the pier which he removed several years be-

fore because it was in the way of an electric wire conduit, that there had been none there since, and none was needed. Sollie testified that the rungs of a ladder so constructed would have a tendency to become loose and give away from use; that the safer construction would be to mortise them into and nail them to the pier. He was supported by three other witnesses. Sollie admitted in effect, however, that the method used was not uncommon in mills. On the other hand, there was a great deal of evidence given by carpenters, architects, and millmen to the effect that the kind of ladder involved was in common use in mills and other establishments; that it was typical of the character of device used by them and was reasonably safe for its purposes.

The following are the controlling principles of law in this case; applied to the undisputed facts they lead to the conclusion that the oil company was entitled to a directed verdict: A master is neither an insurer of the safety of the instrumentality furnished his servant with which to work, nor of the place of his work. The master is only required to use reasonable care to furnish his employee a reasonably safe place to work. Dr. Pepper Bottling Co. v. Gordy, 174 Miss. 392, 164 So. 236; Meridian Grain & Elevator Co. v. Jones, 176 Miss. 764, 169 So. 771; Gulfport Fertilizer Co. v. Bilbo, 178 Miss. 791, 174 So. 65.

A master is not required to furnish the newest, best, and safest machinery appliances and place to work, but only such as are reasonably safe. Vehicle Woodstock Co. v. Bowles, 158 Miss. 346, 128 So. 99; Mitchell v. Brooks, 165 Miss. 826, 147 So. 660; Morgan Hill Paving Co. v. Morris, 160 Miss. 79, 133 So. 229; Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277; Kent v. Yazoo & M. V. Railroad Co., 77 Miss. 494, 27 So. 620, 78 Am. St. Rep. 534; Seifferman v. Leach, 161 Miss. 853, 138 So. 563.

There was no evidence that the oil company had either actual or constructive notice that the rung, which Sollie

claims caused his fall, was loose and might give away. Sollie's testimony that it gave away under his weight was all there was on the subject. Actual or constructive notice was necessary in order to hold the oil company liable. Gulf M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503; Mississippi Central Railroad Co. v. Bennett, 111 Miss. 163, 71 So. 310; Dr. Pepper Bottling Co. v. Gordy, supra.

Sollie admitted that if the rung was defective, it was his duty to repair it. A person cannot profit by his own wrong. Where he is employed to make the place or instrumentalities safe, and negligently fails in his duty, such negligence cannot be attributed to the master. Edward Hines Lumber Co. v. Dickinson, 155 Miss. 674, 125 So. 93; E. L. Bruce Co. et al. v. Brogan, 175 Miss. 208, 166 So. 350; Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Hegwood v. J. J. Newman Lumber Co., 132 Miss. 487, 96 So. 695; Waterman-Fouke Lumber Co. et al. v. Miles, 135 Miss. 146, 99 So. 759.

The argument that the evidence tended to show that the original construction of the ladder was negligent, that it was unsafe, at least to the extent that it made a question for the jury, is without merit. As hereinbefore stated, the evidence showed without any substantial conflict that the ladder involved was in common use in similar industrial plants and others and reasonably safe for its purposes. Where the master furnishes equipment in common use by enterprises of the same kind under similar conditions, he is not negligent although other equipment might be safer. Putting it in other language: Where the master furnishes the ways, means, and appliances generally used by careful and prudent men long engaged in the same character of business, that is the measure of his duty toward his servants unless the unsafeness in the ways, means, and appliances is so obvious that impartial persons could not well be in disagreement upon the issue. Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447; Vehicle Woodstock Co. v. Bowles, supra;

Hammontree v. Cobb Construction Co., 168 Miss. 844, 152 So. 279; Newell Contracting Co. v. Flynt, 172 Miss. 719, 161 So. 298, 300, 743. In the latter case the court quoted with approval the following language: " 'the rule is established practically without dissent that the master is not liable where he observes and follows the usual and customary method or system generally employed by careful and prudent men engaged in the same business, unless . . . the unreasonable unsafeness in the method or system is so evident that impartial persons could not well be in disagreement upon the issue.' "

Reversed and judgment here for appellant.