WRIGHT *v.* BURK HALL-TAYLOE PAINT & GLASS CO., INC.

No. 42105          January 22, 1962          136 So. 2d 599

*Wroten, Orlansky & Miller,* Greenville, for appellant.

*Farish, Keady & Campbell,* Greenville, for appellee.

LEE, P. J.

Charles S. Wright instituted this suit in the Circuit Court of Washington County against Burk Hall-Tayloe Paint & Glass Company, Inc., a corporation, to recover damages for personal injuries sustained by him on account of the alleged negligence of the defendant in failing to furnish him, its employee, a reasonable safe place

in which to work and reasonably safe tools, equipment and appliances with which to work.

The defendant, in its answer, denied the material allegations of the declaration, and set up, by way of defense, that it discharged every legal duty owing to the plaintiff; that the plaintiff was an experienced glazier, and that, in spite of his experience, he elected to do his job in an unsafe way and manner; that the sole proximate cause of his injuries was his failure to use suitable tools and equipment at hand for the performance of the work in a safe and proper way, and in electing to do the work in a careless and unsafe manner; and, in the alternative, that he was contributorily negligent.

The cause was submitted to the jury, and it found a verdict for the defendant. From the judgment entered thereon, the plaintiff appealed.

The only question on this appeal is whether or not the trial court committed prejudicial and reversible error by its admission in evidence of certain photographs which were offered by the defendant.

In order to determine the merits of this question, it is necessary to understand the setting:

The plaintiff introduced eight photographs which depicted scenes of the place where the work was performed. The defendant offered, without objection, two photographs of the scene, numbered 1 and 2, depicting substantially the manner in which the plaintiff performed the work except that it was indicated that Sam Randall, the helper, was in a slightly different position. It also introduced three photographs, numbered 3, 4, and 5, which were merely views of parts of the church and were similar to those offered by the plaintiff. Photographs numbered 6, 7, 8, 9 and 10 showed one of the brick walls of the church, with ladders resting against it, and a walkboard fastened to the ladders with a person standing on the board. The principle was the same in each photograph with a slight variation in the position

or view of the ladders. Number 11 showed the arrangement of a platform by the use of step-ladders and a walkboard while Nos. 12 and 13 showed how work could be done on the inside of the church by the use of a mere stepladder. While the plaintiff objected to the introduction of all photographs from 3 to 13, inclusive, the real objection was against the admission of 6, 7, 8, 9 and 10. Excluding these last five exhibits, the others, even if erroneously admitted, were harmless.

Only two witnesses gave oral testimony as to how the injury occurred, the plaintiff and his helper, Sam Randall. Wright, an expert glazier, as an employee of the defendant, testified that he went to the Negro Catholic Church in Greenville to see what was needed in the performance of his employer's contract; and that he decided that a steel scaffold would be necessary to provide a platform because this would be safer than stepladders and extension ladders. He then went back to the office and told the boss what he wanted. However a superior, Ashbury, informed him that the steel scaffold was not then available, but that he would get it later. The next morning he went to the church with Sam Randall, his Negro helper, taking a stepladder and a two-piece sixteen foot extension ladder. He described how he set about the removal of the panes from the windows and as to the position of the ladder, and said that the board, on which he had to stand, was only eight feet long. He said that he got on the ladder and Sam Randall handed him the pane of glass. He then discovered that he did not have his putty knife and told Sam to get it for him. As he reached to get the knife, when Sam handed it to him, the ladder slipped, and he fell with the glass in his hand and thereby sustained his injury.

On the other hand, Sam Randall testified that he went with Wright to the church in the afternoon, and they carried only an eight foot stepladder, a tool box, and a plyboard; that they did not carry any ladder

jacks or extension ladders although such equipment was at the defendant's shop; that they borrowed from the priest of the church an extension ladder, which was either sixteen or twenty feet long; that Wright took the extension ladder, ran it across the stairway banister, and placed it in the bottom window; that he then got on the ladder and the witness handed him a pane of glass; that Wright found that there were some clips at the bottom and the glass would not slide over, and he asked the witness to get his putty knife, which he had forgotten; that he did so, and when Wright reached for the putty knife, he, the ladder and the glass all came down together; and that Wright selected the equipment to carry from the shop, and the witness simply obeyed his orders.

In explaining that a steel scaffold was safer than a scaffold based on ladders, Wright went to the blackboard and made drawings to emphasize what he had said. (Of course such drawings are not available in the record.) Besides, the record shows that he used his photographs in explaining the manner and method of his work and in demonstrating where he placed the ladder. He admitted, on cross-examination, that photographs numbered 3, 4 and 5 were substantially correct, and that 6, 7, 8, 9 and 10 would correctly describe the situation if the equipment were arranged in that manner, but that, in some instances, the equipment was not available.

R. F. Ashbury, manager of the defendant, testified that Wright did not tell him that he needed a steel scaffold. Charles Ventura, an employee of the company, testified that there was available in the shop for this work two extension ladders, several eight and four foot stepladders, a pair of ladder jacks, a factory type "toothpick staging" with a reinforced steel walkboard twelve to fourteen feet long, and a stock of ropes.

James E. Webb, Jr., an experienced glazier, testified that the customary and usual equipment furnished

by responsible and reasonable men to their glaziers consisted of trucks with adequate racks to hold the glass, ladders, scaffold boards, ladder jacks and hand tools. He said that the equipment, as arranged in the defendant's photograph 7, which was almost identical with 6, 8, 9 and 10, was the safe method to use in doing the work on that church.

John Taylor, an experienced glazier, also testified as to the customary method of glazing, namely, the use of two extension ladders, with ladder jacks and a walkboard. He had viewed the church and fully understood the nature of the work and was required to be done. He said that two extension ladders, with ladder jacks and a walkboard were needed for that work. He then looked at the pictures, which were introduced by the defendant, and said that such equipment was adequate for the job. Using one of the photographs, he stated that it represented exactly how he would have done the work. On the other hand, in consideration of the method admittedly used by Wright, he said that there was no justification for his doing the work in that way.

Actually the oral testimony and the pictures introduced by the plaintiff and the two pictures of the defendant, introduced without objection, show how Wright did the work on this occasion. The plaintiff also in effect conceded that equipment could be arranged in such manner as was shown in the other photographs of the defendant. Wright said that he needed a steel scaffold, and, to that end, he made drawings on the blackboard to show such arrangement and what he was talking about. On the other hand, the defendant contended that plaintiff did not need a steel scaffold; that the company had all of the equipment necessary for the erection of a proper scaffold, and, to that end, instead of having witnesses make drawings on the blackboard, it produced photographs to show the propriety and safety of such a scaffold, if the equipment had been utilized.

■■ ■ As stated, defendant's photographs 1 and 2 were admitted without objection, and properly so because it was admitted that they constituted fair representations of the way and manner in which the plaintiff performed his work with the slight differences pointed out. This was in line with Flora v. Fewell, 241 Miss. 345, 131 So. 2d 187; City of West Point v. Meadows, 236 Miss. 394, 110 So. 2d 372; G. M. & O. Railroad Co. v. Golden, 221 Miss. 253, 72 So. 2d 446; Jefferson Funeral Home v. Pinson, 219 Miss. 427, 69 So. 2d 234; Cinderella Foods v. Miller, (Miss.), 52 So. 2d 641; Orr v. Columbus & Greenville Ry. Co., 210 Miss. 63, 48 So. 2d 630; Favre v. Louisville & Nashville RR Co., 180 Miss. 843, 178 So. 327.

■■■ Photographs 6, 7, 8, 9 and 10 were not photographic reproductions of *tableaux vivants* carefully arranged to bring defendant's version of an actual occurrence, as contended in Fore v. State, 75 Miss. 727, 23 So. 710. There was no contention whatever that the work was actually performed in the manner therein depicted. The plaintiff had used his pictures and drawings on a blackboard to demonstrate the manner in which he would have done the work, if he had been supplied the steel scaffold which he testified that he should have had. On the contrary, the defendant, although denying that Wright asked for the steel scaffold, instead of drawings on a blackboard it produced the photographs to show that the plaintiff, with the equipment which was available to him, could have provided a safe scaffold with which to do the work. In other words the plaintiff was an expert glazier, and as such, instead of taking the necessary equipment for the safe performance of his work, as to which, from custom and usage he was the sole judge, he actually borrowed a ladder at the church, and proceeded to do the work in an unsafe and dangerous way. The plaintiff used his drawings to explain what he needed whereas the defendant used

photographs to show what he ought to have used in the work. A picture from a camera may be preferred over one drawn by an artist, but there was no difference in the principle of demonstration.

It follows that the photographs were properly admitted and the cause is therefore affirmed.

Affirmed.

*Kyle, Arrington, McElroy,* and *Rodgers, JJ.,* concur.